Staples, J,
delivered the opinion of the court.
This case presents the question, whether an action at law can be maintained upon a lost negotiable note transferable by delivery. No decision can be found in the Virginia Reports involving this precise point. In England the doctrine is firmly established, that such an action cannot be maintained; and the sole remedy of the owner is in a court of chancery, which can adjust the equities of the parties, and require suitable indemnity as a condition of relief. Hansard v. Robinson, 7 Barn. & Cress. 90; Ramuz v. Crowe, 1 Exch. R. 166; 18 Eng. Law & Eq. R. 514. In this country there has been some conflict of opinion on the subject; but the great weight of authority is in harmony with the English doctrine. In some of the States statutory remedies have been provided, by which most of the difficulties standing in the way of actions at law have been removed. In other States having common law and equitable powers blended in the same courts, it is the constant practice of those courts to assume jurisdiction in this class of cases. Thus in Massachusetts it has been decided that the court, holding a just regulating power over the judgment and proceedings before it, has authority to prescribe an equitable security to the maker of a lost note, by a proper and suitable indemnity. Fales v. Russell, 16 Pick. R. 315. And so in Pennsylvania, it is held that the failure to indemnify is not in bar of the'action, but is merely a prerequisite to an execution to enforce the judgment, and the right to restrain such execution is an equitable power vested in the courts, to be administered with the machinery of common law forms.
*562 It is obvious that these principles have no application in those States where the common law and equity tribunals are separate and distinct. In these latter, we find the courts of common law steadily refusing to take jurisdiction of suits upon lost negotiable instruments. 2 Parsons on Bills and Notes, 296 and 8 and notes; 2 Rob. Prac., new ed., 220. The learned counsel for the appellee has cited a number of cases which he supposes to be in conflict with these views. Some of these cases show that when a bank note has been cut in halves, and one half lost, the holder may recover upon the other half at law. Upon this proposition there is also much. conflict of decision. But, whatever may be the rule in some of the American courts, in regard to action upon bank notes, the cases of the Bank of Virginia v. Ward, 6 Munf. 166; Farmers’ Bank of Virginia v. Reynolds, 4 Rand. 186, indicate that in this State no such action can be maintained ; because the owner can only recover on establishing his title by the judgmeut of a court of equity, and giving a satisfactory indemnity'to secure the bank against future loss from the appearance and setting up the other half of such note..
In Renner v. Bank of Colombia, 9 Wheat. R. 581, the note was lost after suit brought, not by the plaintiff or his agents, but by the officers of the court. The holder had a perfect right of action at law at the time of the institution of his suit: he could not be deprived of that right by an accident in no manner attributable to his negligence, and turned round to another forum for redress. This rule is recognized in other cases : and is not in conflict with the general principle applicable to negotiable instruments. That principle is, that the party to such an instrument, when he is called upon to pay it, has the right to insist it shall be produced and delivered up to him. And this rule is not varied because suit is brought and payment demanded under *563 compulsory process of law. In either case the maker has the right to call for the production of his note.
As the owner, however, in case of loss of the instrument, cannot do this, the courts allow a recovery upon the terms of his giving proper indemnity. A court of common law cannot require such indemnity as a part of its judgment. It can neither impose terms upon the plaintiff as a condition of such judgment, nor prevent the issue of an execution thereon. In Pierson v. Hutchison, 2 Camp. R. 211, Lord Ellenborongh said, whether au indemnity would be sufficient or insufficient, is a question of which a court of law cannot judge. See also Greenway, ex parte, 6 Ves. R. 862; Aranguese v. Scholfield, 38 Eng. L. & Eq. 424; 1 Story, Eq. Jur. § 84 and 85. Numerous other authorities might be mentioned to the same effect. They establish that the only remedy in such cases is in a court of equity, where all the circumstances of the loss can be fully investigated, and a suitable and proper indemnity provided.
It is insisted, however, that these principles do not apply in the case of notes lost after maturity. The counsel for the appellee says it is clear that a protested negotiable note has no more negotiability, according to the law merchant, than a bond or other paper originally not negotiable. No authority is cited in support of this proposition. I will not say no cases or.dicta can be found to sustain it. It is certainly in conflict with the leading decisions, and the opinions of the most accurate writers on commercial law. In Story on Promissory Notes, § 178, it is said “ a negotiable note may be transferred at any time while it remains a good, subsisting, unpaid note, whether before or after it has arrived at maturity ; and in the latter case, even though it be protested for nonpayment, and bears upon its face the marks of its dishonor.” In Miller v. Davis, 14 Gratt. 1, 13, Judge Moncure, speaking for the court, says' in reference to overdue notes : “ It has long been settled that they are *564 negotiable; and it belongs to the Legislature to make assignable only.” See also Baxter v. Little, 6 Metc. R. 7; 2 Rob. Prac. new ed. 253; 2 Parsons on Bills and Notes; Chitty on Bills, 217; Redf. & Big. Leading eases on Bills of Exchange and Promissory Notes.
It is true, that the person taking a dishonored note, takes it subject to all the equities attaching to the instrument in the hands of the original parties ; and it may be conceded for the sake of argument, that when the note has been lost, he holds it subject to all the objections which affected it in the hands of the party who first tortiously transferred the note. But the answer given to this reasoning is, that it is part of the contract of the maker to pay on the presentment of the instrument to him for that purpose, and he has therefore a right to its possession as his voucher against a future demand. Besides, the maker may not be able to show the note was lost after maturity ; and he is not to be exposed to such risk without indemnity.
In Hansard v. Robinson, 7 Barn. & Cress. 90, Lord Teuterden said : “If the bill should afterwards appear, and a suit be brought against the acceptor—a fact not absolutely improbable in the case of a lost hill—is he to seek for the witnesses to prove the loss, and to prove that the new plaintiff must have obtained it after it became due ? lias the holder a light, by his own negligence or misfortune, to cast this burdeu upon the acceptor, even as a punishment for not discharging the bill on the day it became due. We think the custom of merchants does not authorize us to say that this is the law.” It is impossible to deny the force or soundness of these views. They are fully sustained by the adjudicated cases, by the most eminent writers on Commercial Law, and by the opinions of three of the judges of this court; and must be regarded as the established doctrine of this State. Miller v. Davis, 14 Gratt. 1; 2 Green Bill of Ex *565 change and Promissory Notes; Story on Promissory Notes, § 450, note 2; Byles on Bills, 300; 2 Parsons on Notes and Bills, 295; Edwards on Bills, 297.
When, however, it appears that the note or bill has been destroyed, different principles apply. Whatever diversity of opinion, on this point, may have formerly existed, it is now the established doctrine that the holder, upon showing the destruction of the note after its maturity, may recover thereon in a court of law. In such case no indemnity is necessary, as the maker can in the nature of things encounter no risk in paying the note. Leading Cases upon Bills of Exchange and Promissory Notes, 679; 2 Parsons on Bills and Notes, 295; Chitty on Bills, 154. It is true that when the evidence of the destruction is merely presumptive, the maker is exposed to the danger of the reappearance of the instrument in the hands of a bona fide holder. This, however, only manifests the importance of clear and satisfactory proof of the destruction. The degree of evidence necessary to constitute such proof can never be previously defined. It is impracticable, in the nature of things, to lay down any rule on the subject. The only legal test in this, as in other cases, is the sufficiency of the evidence to satisfy the jury beyond reasonable doubt, that the note is no longer in existence.
The evidence adduced by the defendant in error, in the court below, established the loss of the note by robbery; but was not of itself sufficient to prove its destruction. It was not offered with that view, nor passed upon by the jury in that connection. The motion to exclude the evidence substantially raised the question of the right to sue at law upon a lost note ; and the ruling of the court was in effect an affirmance of the right. The court no more invades the province of the jury by excluding evidence, than by pronouncing it insufficient in law. By one course the evidence is thrown out“of the case, and by the other it is destroyed; which in *566 effect is the same thing. Bell v. Crawford, 8 Gratt. 110, 132. I think, therefore, the court erred in overruling the motion to exclude the evidence set out in the first "bill of exceptions. For this error the judgment must be reversed, and the cause remanded for a new trial. On such trial the defendant in error may be prepared to produce the note, or possibly to trace it to the possession of the plaintiff in error ; or to show that at the time of the trial a recovery thereon would be barred by operation of the statutes of limitation ; or he may be able to produce satisfactory evidence of the destruction of the note, or such circumstances as would plainly justify a jury in presuming that fact. Although the evidence set out in the first bill of exceptions only proved the loss of the note by robbery, yet, if hereafter offered in connection with other facts and circumstances, tending to prove its destruction, the court below would be warranted in permitting it to go to the jury for the purpose of creating a presumption that the instrument had been in fact destroyed.
These views render it necessary to consider the remaining grounds of error suggested by the plaintiff' in-error. One of these is to the refusal of the Circuit court to give certain instructions, designated in the record as defendant’s instructions, Ho. 3, 4 and 5. The proposition involved in the fifth was settled by this court in Magill v. Manson, 20 Gratt. 527. Instructions No. 3 and 4 raise the question of the extent of the liability imposed by the negotiable note in controversy. It appears that in the latter part of the year 1863, or early in the year 1864, the plaintiff in error borrowed from the defendant in error about twenty-five thousand dollars, in Confederate treasury notes, and executed therefor his negotiable note with an endorser, payable in ninety days, without interest. This note was renewed from time to time, the plaintiff in error paying the interest in advance upon each renewal; and on one occasion four thousand *567 dollars of principal. The note in question is one of those, and the last executed upon such renewal.
The first instruction of plaintiff’ in error asserts the proposition, that he was discharged from the debt by his offer to pay the note maturing in January 1865 ; his subsequent deposit of the amount due in the Bank of Virginia, and its entire loss by the failure of the bank. It may be true that the plaintiff in error offered to make such payment; and that he was induced by the persuasions of the defendant in error to withdraw such offer and to retain the money in his own hands ; but these matters constituted neither a payment, nor an accord and satisfaction of the debt. Had the plaintiff in error persisted in his tender and then deposited the notes in bank to the credit of the defendant in error, there might be some plausibility in his pretension. But so far from insisting on the tender, he Waived it, and permitted himself to be persuaded to retain the money, and executed a new note for the debt. His subsequent deposit of his funds in bank in his own name, and their ultimate loss cannot affect the obligation of his contract. The court was therefore not in error in refusing this instruction.
The question intended to be raised by the other instructions relates to the time of applying the scale of depreciation ; the plaintiff in error insisting that January 1865, the date of the last note, should be adopted. As the note matured after the close of the war, the rule in Dearing's adm'x v. Rucker, 20 Gratt. 426, cannot apply. "What rule should be adopted in such case, has never been settled, nor is it necessary to consider that question now. As before stated, the original loan was made in 1868 or 1864, a note given for its repayment, which was renewed from time to time. The last note being dishonored, there is nothing to prevent a resort to the original consideration. Upon familiar principles, if a note is taken as a conditional payment, or in renewal, and is not duly paid or discharged, the original debt revives ; *568 and this principle applies to every renewal, which is but continuation of the same debt. Hor is it material whether the note or bill be given for a precedent or co-temporary debt; in neither instance will it operate as an extinguishment or payment, unless it be so accepted by the creditor. If not paid at maturity, the creditor may sue upon it, or upon the original cause of action. And if between the time of drawing the bill or making the note the currency is depreciated in which it is to be paid, it should be discharged according to the value at the time when the note or bill was executed. Story on Bills of Exchange, § 418; Byles on Bills, 284; 2 Parsons on Bills and Notes, 156; 5 Rob. Prac. 845; Farmer's Bank v. Mutual Assurance Society, 4 Leigh, 69; Parker v. Cousins, 2 Gratt. 372. In this case the defendant in error might have sued for the original debt, or he might have inserted in his declaration a count for the recovery of the amount loaned. His failure to do so does not preclude the jury from applying the scale at the date of the loan, if it seemed to them right and proper under all the circumstances. If, however, any error was committed in respect of this matter, the plaintiff in error has no cause of complaint as the court on his motion instructed the jury it was their province to fix the period for applying the scale. The court, however, further instructed the jury that the plaintiff" was entitled to their verdict for the value of the Confederate notes at the date of the original transaction. Hnder the act of 1866-’7, it is the province of the jury to fix the period at which the scale of depreciation shall be applied. In the exercise of this discretion they camiot be controlled by the court, unless indeed the contract of the parties, or some fixed rule of law, prescribes the measure of recovery. The court was therefore in error in giving this instruction ; nor was the error corrected by the subsequent instruction given at the instance of the defendant, that it *569 belonged to the jury to fix the period for applying the ■, /? i • ' scale ot depreciation.
For these errors the judgment must be reversed, and the cause remanded for further proceedings, in accordanee with the principles herein announced.
Judgment reversed.