# Richmond.

W. R. Long v. Laura A. Mayo, Trustee, and Others.

March 19, 1931.

Present, Campbell, Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*S. S. P. Patteson & Muse* and *Wiltshire & Rives,* for the plaintiff in error.

*H. Carter Redd,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

The parties hereto will be referred to as plaintiff and defendant, as they were related in the trial court.

The defendant, an employee of the Mayo Milling Company of Richmond, Virginia, a corporation, purchased from George D. Mayo, the president of the company, and owner of the major portion of its stock, twenty-seven shares of the capital stock of the corporation for the sum of $8,100.00. Of the purchase price he paid $1,300.00 in cash, and for the residue he executed his note for $6,800.00, payable February 9, 1917, and also executed his note for $544.00 for interest, payable February 9, 1917.

On September 27, 1915, the following receipt or writing was executed by the said George D. Mayo:

"Received of W. R. Long, eighty one hundred dollars for 27 shares of the Mayo Milling Co., Inc., stock, $1,300.00 in cash, $6,800.00 in note due Feb. 9th, 1917, & $544.00 note for interest due Feb. 9th 1917.

"These notes can be anticipated at any time by W. R. Long, or if not convenient to him they can run & be paid as dividends are declared by the Mayo Milling Co., Inc.

"I, further more do not desire that W. R. Long shall be inconvenienced or pushed in any way in the payment of the above notes.

(Signed)   "GEORGE D. MAYO."

The principal note, and so far as the record shows the interest note also, were curtailed by the application of the dividends declared on the stock and by certain payments, in cash, made by the maker, who was the defendant in the suit in the trial court, and the unpaid balance was ascertained to be $1,000.00 on April 17, 1917. The defendant executed his note for this amount, payable to Geo. D. Mayo, which was renewed from time to time, the maker at each renewal paying the interest in cash, until April 17, 1926, when he executed a similar note for the same amount to Mrs. George D. Mayo, which is the note sued on. It appears from the evidence that George D. Mayo had become ill and his faculties had become impaired and that W. R. Long, the maker of the note, defendant, took up with Mrs. Mayo the matter of the renewal again of the note and he received from her a letter, which is in part as follows:

"BELLEVILLE,

"Charlottesville, Virginia, April 16, 25.

"Dear Mr. Long:

"Your business letter received today—also your other letters, and I am hurrying at once to answer all of them in one. I accept and agree to the renewal of your note under all the

conditions just as G. D. had them and I will look through the papers and send your old note back at my earliest convenience. I want to say, however, that when the settling up of G. D.'s business affairs takes place I want as soon as conveniently possible to close up the various loans he has seen fit to make, as I personally prefer my money at the same rate of int. in stocks and just get a regular dividend . . . . . ."

It will thus be seen that the note payable to Mrs. Mayo ·was connected with and subject to the same conditions that were incorporated in the original receipt given by George D. Mayo, her husband, though she informed him that when her husband's business affairs were settled up she wished to close up the various loans that he had made. This, of course, meant that she wished the note paid at the time referred to.

Quoting from the testimony of W. R. Long, the maker of the notes and the defendant, we have the following:

"Q. * * * Mr. Long, you said that when you bought this stock from Mr. Mayo you paid him $1,000.00 cash on September 27, 1915?

"A. Yes, sir.

"Q. Was that out of dividends?

"A. No, sir; it was cash—a check.

"Q. You have a receipt there which you have shown in evidences. Received of W. R. Long $8,100.00 for twenty-seven shares of Mayo Milling Co., Inc., stock, $1,300.00 in cash. Was that also paid in cash?

"A. That was a $1,000.00 check and $300.00 accrued dividends on 5 shares of stock which I had prior to that time.

\* \* \* \* \* \* \* \* \*

"Q. According to this statement you had paid all on this note except $1,000.00 on February 17, 1917. That is correct?

"A. Yes, that is correct.

"Q. Have you paid any interest on that note, since that date?

"A. Each year I paid $60.00.

"Q. Did you pay that out of dividends or out of your pocket?

"A. I paid that out of my pocket. There were no dividends to pay it with.

\* \* \* \* \* \* \* \* \*

"Q. Did you pay any part of the principal out of your own funds?

"A. I think that statement will show that I paid some out of my own funds—$400.90.

\* \* \* \* \* \* \* \* \*

"Q. In your letter of February 17, 1917, you state that you paid an item of $400.00. Was that paid out of your pocket or out of dividends?

"A. That was paid out of my pocket. I paid that to make the amount even $1,000.00 balance."

It will be observed that none of the notes in question ever passed into the hands of anyone who could be classed as an innocent purchaser for value. The transaction has always remained as a matter between the original parties, the maker and the payee. In no sense could Mrs. Mayo be considered except as standing in the shoes of her husband, George D. Mayo. Shortly after the date of Mrs. Mayo's letter to the defendant, George D. Mayo died and on September 17, 1928, Mrs. Mayo and the National Bank of Charlottesville, trustees under the will of George D. Mayo, instituted suit in the Law and Equity Court, Part II., of the city of Richmond, against W. R. Long to recover the amount of the aforesaid note, payable to Mrs. George D. Mayo, the said Long having refused to pay the said note for the alleged reason that he was absolved from so doing because the aforesaid receipt limited the payment of the note to the dividends declared on the stock.

During the World War period the Mayo Milling Co., Inc., was very prosperous and its dividends were very considerable, but subsequent thereto it ceased to be a paying concern and its affairs were liquidated.

In the trial of the case the defendant offered in evidence, over the objection of the plaintiff, the receipt and the

letter of Mrs. Mayo, as tending to prove his contention that he was not bound to pay the note. The court overruled the objection of the plaintiff and admitted testimony proving the letter and the receipt and the circumstances in connection therewith. Upon its reconsideration of its previous ruling the court excluded all of this evidence from consideration by the jury. There was a peremptory instruction that there was no evidence connecting the note sued on with the collateral papers offered in evidence by the defendant and the jury found a verdict in favor of the plaintiff for the amount of the note with interest. The defendant moved to set aside the verdict as contrary to the law and evidence. In our opinion the court erred in instructing the jury that there was no evidence connecting the note sued on with the collateral papers offered in evidence by the defendant and also in taking from the jury the consideration of the testimony offered. In Amer. & Eng. Ency. of Law (2nd ed.), Vol. 4, p. 144, under the heading Bills and Notes, we find the following: "It is an elementary principle that when separate writings are executed between the same parties at the same time, in the course and as parts of the same transaction, and intended to accomplish the same general object, they are to be construed as one and the same instrument."

"In accordance with this principle, promissory notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract in a controversy between the original parties to the instrument or persons standing in their situation or chargeable with notice of the contemporary instruments."

Certain it is that the receipt was executed at the same time that the notes were and that they were parts of the same transaction, and were intended to accomplish the same object, therefore they should be construed together as forming one contract. Nearly ten years thereafter Mrs. Mayo by letter to the defendant recognized and ratified the said receipt and what

it imported and assured him that he might renew the note under the same conditions. This he did. The renewal note under these circumstances relates back to the original transaction and in our opinion connects the renewal note inseparably with it.

In the case of *Moses* v. *Trice,* 21 Gratt. (62 Va.), p. 556, 8 Am. Rep. 609, the court said:

"Upon familiar principles, if a note is taken as a conditional payment, or in renewal, and is not duly paid or discharged, the original debt revives; and this principle applies to every renewal, which is but a continuation of the same debt. Nor is it material whether the note or bill be given for a precedent or co-temporary debt; in neither instance will it operate as an extinguishment or payment, unless it be so accepted by the creditor. If not paid at maturity, the creditor may sue upon it, or upon the original cause of action."

The admission of this evidence, that is, the receipt and the letter and their circumstances does not offend or violate the parol evidence doctrine. Certainly parol testimony cannot be introduced to vary, alter or change the terms of a valid written instrument. This is settled law in Virginia. But the distinction is that we are here concerned with a separate written statement made at the time the note was executed about the same transaction and by one of the parties thereto which was delivered to the other party.

But the effect of the writing is in our opinion wholly different from that contended for by the defendant. The payment of the note was never intended to be limited to the stock dividends. If such had been Mayo's intention it was perfectly easy of statement by apt words employed to effect it. The stock was evidently very desirable. It was a good investment upon the part of Long. It was paying unusual dividends and doubtless Mr. Long was anxious to secure it. He was the vice-president and an employee of the milling company and he and Mr. Mayo, the president, were on the most friendly terms.

It was perfectly natural for Mayo to wish to make the purchase easy for him so he said in effect that Long could anticipate the payment at any time or if not convenient the notes could run and be paid as dividends were declared. And furthermore that he did not desire Mr. Long to be inconvenienced or pushed in any way. Can it be successfully contended that Mayo intended to present this stock to Mr. Long as a gift. If so, why did he require notes and cash and if Mr. Long understood that his payments were to be limited by stock dividends why did he make payments in cash. Why did he pay $60.00 interest money annually and when he was informed by Mrs. Mayo that when Mr. Mayo's affairs were settled she would expect his loans to be closed, tantamount to being paid, why did he not at once say: "The source of the dividends has ceased and I am not bound, in any other way, to pay the note, and I will not execute a renewal upon such an understanding." The truth is that the parties themselves interpreted the whole transaction which negatives the contention of the defendant. The receipt was simply a friendly assurance that the defendant would be accommodated and dealt with in the matter on a lenient basis.

The court properly refused the instruction offered by the defendant. It did not correctly propound the law of the case.

The trial court should have admitted the receipt and the letter as proper and legal evidence, and it should have, by an appropriate instruction, construed the effect of the said papers to be as herein indicated.

We affirm the judgment of the court.

*Affirmed.*