[No. 14553. In Bank.—March 20, 1895.]

## SAVINGS AND LOAN SOCIETY, APPELLANT, *v.* JOHN M. BURNETT ET AL., RESPONDENTS.

DEED OF TRUST—MORTGAGE.—A deed executed to trustees named as parties of the second part, to secure an indebtedness from the grantor to a party named as party of the third part, as the beneficiary of the trust, and any further indebtedness of the grantor to the party of the third part that may be contracted during the continuance of the trust, is a deed of trust, and not a mortgage, and transfers the legal title to the trustees, retaining to the grantor the right to a reconveyance upon payment, and conferring the right of sale as provided in case of default.

ID.—EXTINGUISHMENT OF TRUST—ACCEPTANCE OF NOTE IN PAYMENT OF DEBT SECURED.—If the beneficiary in a deed of trust accepts a note made by the debtor, and his subsequent grantee, in payment and satisfaction and extinguishment of all sums of money then due from the debtor, or his grantee, and of all claims and demands which the beneficiary then had against them, or either of them, by such payment the trust is extinguished, except as to the duty of the trustees to reconvey, and a deed by the trustees after sale is in contravention of the trust and void.

ID.—FINDING AGAINST EVIDENCE—NOTE NOT RECEIVED IN PAYMENT.—The finding that a note was taken and received in payment and satisfaction and extinguishment of the indebtedness secured by the deed of trust is against the evidence, notwithstanding the new note was given for a balance due upon pre-existing indebtedness, and the former note secured by the deed of trust was canceled and surrendered to the debtor, where the evidence of witnesses without conflict shows that the note was neither given nor received in payment of the pre-existing indebtedness, and that there was no mutual agreement of the parties to that effect, and the note itself declares in terms that it is secured by the deed of trust, and it appears that there was no demand for a reconveyance by the trustees, but a subsequent request was made for a postponement of the sale, and the trust deed was ratified in writing by the debtor and his grantee.

ID.—DISPUTABLE PRESUMPTIONS—CONFLICT OF EVIDENCE.—The disputable presumptions that an obligation delivered up to a debtor has been paid,

and that the ordinary course of business has been followed, do not raise a conflict in the evidence, where the fact is proven contrary to the presumptions by evidence without conflict, but in such case the presumption is simply overcome and dispelled; and such presumptions are allowed to stand as evidence, not against the facts they represent, but in lieu of proof of them.

ID.—EXPRESS AGREEMENT REQUIRED TO EXTINGUISH ONE NOTE BY ANOTHER.—It is the general rule that one note or executory contract does not extinguish another, and there must be an express agreement or understanding to that effect before another note, bill, or check extinguishes and satisfies the indebtedness evidenced by an earlier one.

ID.—PRESUMPTION AGAINST PAYMENT—SECURED DEBT.—Where a note is secured by a deed of trust, the taking of a new note for the debt, whether the new note be by the same maker, or whether it bears an additional name, is strongly presumed not to be taken in payment of the debt, where, if so taken, it would be taking an unsecured debt for one fully secured.

ID.—OPTIONAL ADVANCES AFTER ACTUAL KNOWLEDGE OF LATER DEED—CONSTRUCTIVE NOTICE.—Where the beneficiary in a deed of trust has the option to make payments or advances on account of the debtor the deed of trust cannot be enforced against subsequent encumbrancers, or subsequent trustees of the debtor under a second deed of trust, for advances made or given after actual notice of the subsequent encumbrances or deed; but constructive notice by the recording of the subsequent encumbrance or deed is not enough.

ID.—POWER TO SELL UNDER TRUST DEED—SALE FOR AMOUNT GREATER THAN SECURED DEBT—REMEDY BY ACTION.—Powers of sale under trust deeds or mortgages will be strictly construed, and the acts of the trustees in contravention of the trust are void; but it does not follow that any sale made under such a power is void, or even voidable, because made for an amount greater than the secured debt, where no bad faith appears; but the remedy of the debtor is by an action to recover the surplus, and not by an action to set aside the sale, in the absence of proof of fraud, or that the property or the rights of the mortgagor were injuriously affected, or that bidders were deterred from attending the sale.

ID.—PAYMENTS FOR BENEFIT OF PROPERTY—SANCTION BY TRUSTEE UNDER LATER DEED—RATIFICATION—QUIETING TITLE—PLEADING.—Where the trustee under the later deed has authority to make improvements and to raise money by mortgage or otherwise for that purpose, and the subsequent payments by the bank were requested both by the debtor and by the subsequent trustees, who both, with knowledge, ratified the prior trust deed as security for all payments made by the beneficiary of that deed, in an action by such beneficiary to quiet title to the property purchased at a sale under the first trust deed, where no pleading for the defendants presents a question as to the validity of the sale, or makes any offer to restore any of the moneys admittedly paid under the first deed of trust, it cannot be held, upon appeal, that the sale thereunder was either void or voidable.

FINDING AS TO OWNERSHIP—CONCLUSION OF LAW—SPECIAL FACTS FOUND.—Although ownership may be pleaded and found as an ulti-

mate fact, yet it may be pleaded as a conclusion of law, and be deter-
mined by the court as such conclusion, and not as a fact; and where the
court sets forth special facts in its findings, upon which it predicates
ownership as a conclusion of law, the conclusion cannot stand, if the
specific facts found do not support it.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.

The facts are stated in the opinion of the court.

*A. N. Drown,* for Appellant.

Plaintiff was seised in fee of the land at the com-
mencement of the suit, as the deed of trust to Burr and
Dean passed the legal title to the land (*Grant* v. *Burr,*
54 Cal. 298; *Bateman* v. *Burr,* 57 Cal. 480, 483; *Durkin*
v. *Burr,* 60 Cal. 360; *Savings & Loan Soc.* v. *Deering,* 66
Cal. 281, 286, 287; *Partridge* v. *Shepard,* 71 Cal. 470,
478), and carried all of the estate and title which Ma-
honey had when he executed it, and all that he could
thereafter acquire, in and to the land thereby conveyed.
And this not only by its express terms, but by operation
of law. (Hittell's Digest, sec. 675; Civ. Code, secs. 863,
1058, 1091, 1106, 2930; *Orr* v. *Stewart,* 67 Cal. 275, 277;
2 Perry on Trusts, 4th ed., sec. 602 *aa, bb.*) After the
execution of this deed of trust, after Mahoney had
thereby emptied himself of his whole estate, there was
nothing left in him to be conveyed to Burnett, or to any
one else. (*Partridge* v. *Shepard, supra.*) Or, if there
was, it could only be conveyed subject to the trust, and
to the execution of the same. (Civ. Code, sec. 864.) The
appellant, who was the beneficiary under the deed of
trust, was, by its terms, entitled to purchase at the trus-
tees' sale, and also had an independent legal right so to
do. (*Felton* v. *Le Breton,* 92 Cal. 457, 467; 2 Perry on
Trusts, 4th ed., sec. 602 *v.*) A conveyance by the trus-
tees, by a deed reciting a compliance with the provi-
sions of the deed of trust, passes, *prima facie,* a good and
sufficient title to their grantee. (*Savings & Loan Soc.* v.
*Deering, supra.*) The passage of the title to appellant
was not interrupted nor defeated by any thing that was

done subsequent to the execution of the deed of trust. *Tapia* v. *Demartini*, 77 Cal. 383, 386; 11 Am. St. Rep. 288; *Tully* v. *Harloe*, 35 Cal. 302, 309; 95 Am. Dec. 102; *Wood* v. *Franks*, 67 Cal. 32, 35.) The renewal note did not operate as a payment of the original note, or defeat or annul the power of sale, under the trust deed, to Burr and Dean. Unless actual payment be made, the debt still remains. (Civ. Code, sec. 1478; *Griffith* v. *Grogan*, 12 Cal. 317, 323; *Higgins* v. *Wortell*, 18 Cal. 330; *Tolman* v. *Smith*, 85 Cal 280, 290; 2 Daniell on Negotiable Instruments, 4th ed., sec. 1260.) All the disbursements made after the execution of the trust deed were expressly authorized and fully covered by the provisions of the deed, and it, and the power of sale given by it, continued as security for their reimbursement. They alone are sufficient to sustain the sale. (*Crawford* v. *Roberts*, 50 Cal. 235, 242.) The power of sale being coupled with an interest, survived as long as that interest survived. (Civ. Code, sec. 871; 2 Perry on Trusts, 602 *h*, 602 *k*; Civ. Code, secs. 2279, 2282; 2 Perry on Trusts, 4th ed., secs. 920, 921; *Savings & Loan Soc.* v. *Deering, supra*.) The deed of trust was not executed simply to secure the payment of the original note, nor to secure any note as such, but secured the debt, the note being merely evidence of the debt. (2 Jones on Mortgages, sec. 924; *Hilt* v. *Beebe*, 13 N. Y. 556, 563.) The respondents are estopped from questioning the continuing validity of the deed of trust and power of sale by their declarations relating to the deed of trust contained in the written instrument, signed by them, renewing their obligation to the bank, and contained in the promissory notes signed by them. (Code Civ. Proc., sec. 1962, subds. 2, 3.) The evidence is insufficient to justify the finding that the second note was taken and received by appellant in payment and satisfaction and extinguishment of all sums of money then due to it from Denis Mahoney or John M. Burnett, as it shows merely an intention to renew and continue the debt, and does not show payment. (2 Daniell on Negotiable Instruments, 4th ed., sec. 1259.)

Neither payment, nor an agreement to receive a note as payment, will be presumed, but must be affirmatively established by the party relying upon them. The burden is on him. (*Welch* v. *Allington,* 23 Cal. 322, 323; *Sloan* v. *Rice,* 41 Iowa, 465, 467; *Godfrey* v. *Crisler,* 121 Ind. 203, 205; *O'Bryan* v. *Jones,* 38 Mo. App. 90, 93.) The acceptance of a note for a pre-existing debt does not, *per se,* extinguish it; it merely extends the period of the credit. (*Smith* v. *Owens,* 21 Cal. 11; *Welch* v. *Allington, supra; Tolman* v. *Smith, supra;* 2 Daniell on Negotiable Instruments, 4th ed., sec. 1260; *Griffith* v. *Grogan, supra; Wiener* v. *Peacock,* 31 Mo. App. 238, 246; *Cheltenham Stone & Gravel Co.* v. *Gates Iron Works,* 124 Ill. 623, 627; *Godfrey* v. *Crisler, supra; Brown* v. *Olmstead,* 50 Cal. 162, 165; *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, 20, 21; *Dean* v. *Ridgeway,* 82 Iowa, 757; *Holmes* v. *Briggs,* 131 Pa. St. 233, 240; 17 Am. St. Rep. 804; *Flower* v. *Elwood,* 66 Ill. 446; *New Hampshire Bank* v. *Willard,* 10 N. H. 210; *Darst* v. *Bates,* 51 Ill. 439.)

*E. W. McKinstry,* also for Appellant.

*Jarboe & Jarboe, John R. Jarboe, Robert H. Countryman, D. I. Mahoney,* and *J. M. Burnett,* for Respondents.

The twenty thousand dollar note made by Denis Mahoney was paid, extinguished, satisfied, canceled, and discharged. Possession of a promissory note by the maker raises a presumption of payment. (Code Civ. Proc., sec. 1963, subds. 3, 4, 8, 9, 13, 19, 20; Civ. Code, sec. 3137, subds. 1, 2; *Turner* v. *Turner,* 79 Cal. 565; *Brown* v. *Dunckel,* 46 Mich. 29; *Norris* v. *Badger,* 6 Cow. 449; 1 Greenleaf on Evidence, sec. 38; 18 Am. & Eng. Ency. of Law, 206; 2 Daniell on Negotiable Instruments, sec. 1227.) The presumption being uncontroverted, the court was bound to find according to the presumption. (Code Civ. Proc., sec. 1961; *Kidder* v. *Stevens,* 60 Cal. 414, 419; *Bush* v. *Barnet,* 96 Cal. 202.) The payment of money is not necessary to the extinguishment of an obligation. A debt may be paid by

the giving of a note, if it is offered and accepted as payment. (*Stanley* v. *McElrath*, 86 Cal. 449–55; Civ. Code, sec. 1473; *Burchard* v. *Frazer*, 23 Mich. 224, 238; *Sage* v. *Walker*, 12 Mich. 425; *National Bank* v. *Wells*, 79 N. Y. 498; *Warring* v. *Hill*, 89 Ind. 497, 501; *Jewett* v. *Pleak*, 43 Ind. 368; *Hutchins* v. *Olcutt*, 4 Vt. 549; 24 Am. Dec. 634; *Cadens* v. *Teasdale*, 53 Vt. 469; 38 Am. Rep. 697; *Babcock* v. *Hawkins*, 23 Vt. 561; *Farr* v. *Stevens*, 26 Vt. 299; *Gage* v. *Lewis*, 68 Ill. 605, 618; *Brewer* v. *Branch Bank*, 24 Ala. 439; *Kappes* v. *White etc. Wood Co.*, 1 Ill. App. 280; *Huffmans* v. *Walker*, 26 Gratt. 314; *Sheehy* v. *Mandeville*, 6 Cranch, 253, 261, per Marshall, C. J.; *Christie* v. *Craige*, 20 Pa. St. 430.) Giving a new note for an old one is a payment of the old note, and a mortgage given to secure the old note will be thereby satisfied. (*Iowa County* v. *Foster*, 49 Iowa, 676; *Schneider* v. *Kolthoff*, 59 Ind. 568; *Burchard* v. *Frazer, supra.*) It is not necessary to the extinguishment of an obligation that there should be actual payment in gold coin or money. (Civ. Code, secs. 1473, 1636, 1647, 1699, 3164, 3268; *Wright* v. *Mix*, 76 Cal. 465; *Farmers' N. G. Bank* v. *Stover*, 60 Cal. 387; *Mount* v. *Chapman*, 9 Cal. 294; *Guy* v. *Du Uprey*, 16 Cal. 195; 76 Am. Dec. 518; *Hagood* v. *Swords*, 2 Bail. 305; *Low* v. *Treadwell*, 12 Me. 441.) In an action to quiet title, until the plaintiff has proven his own interest and ownership in the land, the defendant is not called upon to prove or produce his claim. (*Pennie* v. *Hildreth*, 81 Cal. 127, 131; *McGrath* v. *Wallace*, 85 Cal. 622.)

*Robert Y. Hayne*, also for Respondents.

Even if the trust deed did pass the legal title to the property, it nevertheless left an equitable interest in the debtor which could be transferred, devised, or dealt with the same as any other estate. (*Watson* v. *Sutro*, 86 Cal. 527; *King* v. *Gotz*, 70 Cal. 236; *Howell* v. *Budd*, 91 Cal. 351; *Eversdon* v. *Mayhew*, 65 Cal. 163; *McMillan* v. *Richards*, 9 Cal. 407.) This equitable interest passed by the deed to Burnett in trust for the family of the debtor.

The consideration of blood or marriage is a meritorious consideration. (*Hill* v. *Den*, 54 Cal. 20.) And this deed is entitled to as much regard as any other deed. The appellant sought, by the present action, to cut off the equities of those minor children. But an action to quiet title is in equity. (*Benson* v. *Shotwell*, 87 Cal. 60; *Brandt* v. *Wheaton*, 52 Cal. 430; *Hancock* v. *Plummer*, 66 Cal. 338.) If the defendant had any equities the action must fail, as the action was brought to cut off the equities of the defendants and not to assert any equities which the plaintiff might have. The pleadings are not adapted to any such purpose. (*Von Drachenfels* v. *Doolittle*, 77 Cal. 295; *Bryan* v. *Tormey*, 84 Cal. 126.) As the sale by the trustees was for considerably more than was due, an equity was left in the defendants. (See *Shillaber* v. *Robinson*, 97 U. S. 78.) The sale, being for more than was due, is not valid in equity. (*Spencer* v. *Annan*, 4 Minn. 542; *Ormsby* v. *Tarascon*, 3 Litt. 411; *San Francisco* v. *Pixley*, 21 Cal. 59; *Vigoureux* v. *Murphy*, 54 Cal. 351.) The power given the trustees must be strictly complied with. (2 Perry on Trusts, 3d ed., sec. 602.) As soon as sufficient property was sold to pay what was actually due the power to sell ceased. (*Baker* v. *Halligan*, 75 Mo. 435.) Where an owner of land has transferred it to third persons under a trust deed, as here, and where the making of further advances is optional with the grantee, the grantor has no right to go on raising money thereon, and, after the lender has actual notice of the transfer, he has no further option to lend upon the property, and any further advances after such notice could not be covered by the trust deed. (*Brinkerhoff* v. *Marvin*, 5 Johns. Ch. 327; *Ackerman* v. *Hunsicker*, 85 N. Y. 51; 39 Am. Rep. 621; *Tapia* v. *Demartini*, 77 Cal. 387; 11 Am. St. Rep. 288; *Hopkinson* v. *Rolt*, 9 H. L. Cas. 514; *Daun* v. *London Brewing Co.*, L. R. 8 Eq. Cas. 155; *Menzies* v. *Lightfoot*, L. R. 11 Eq. Cas. 468, 469; *London etc. Banking Co.* v. *Ratcliffe*, L. R. 6 App. Cas. 722; *Bradford Co.* v. *Briggs*, L. R. 29 Ch. Div. 153; L. R. 12 App. Cas. 29; *Union Bank* v. *National Bank*, L. R.

12 App. Cas. 53; *Burgess* v. *Eve*, L. R. 13 Eq. Cas. 460; *Appeal of Bank of Montgomery County*, 36 Pa. St. 172; *Spader* v. *Lawler*, 17 Ohio, 380; 49 Am. Dec. 461; *Ripley* v. *Harris*, 3 Biss. 199; *Chester Nat. Bk.* v. *Gunhouse*, 17 S. C. 494.) Many authorities take a distinction between cases where the future advances are optional and cases where the first mortgagee is bound to make them, and confine the rule to cases where the future advances are optional, as in this case. (*Ladue* v. *Detroit etc. R. R. Co.*, 13 Mich. 380; 87 Am. Dec. 759; *Ward* v. *Cooke*, 17 N. J. Eq. 100; *Brinkmeyer* v. *Brownelle*, 55 Ind. 487; *Alexandria Sav. Inst.* v. *Thomas*, 29 Gratt. 486; *Heintze* v. *Bentley*, 34 N. J. Eq. 566, 567.) The original demand was extinguished by the second note, which operated as payment and satisfaction of the first note. The payment of money is not necessary to the extinguishment of an obligation. A debt may be paid by the giving of a note, if it be offered and accepted in payment. (*Stanley* v. *McElrath*, 86 Cal. 455.) And whether or not it was so accepted was a question of fact to be determined by the trial court. (*Griffith* v. *Grogan*, 12 Cal. 324.) And such question of fact is to be determined from all the circumstances of the case. It is not necessary, as seems to be supposed by counsel, that it should be manifested by any definite form of words. (*Hart* v. *Boller*, 15 Serg. & R. 163; 16 Am. Dec. 536; *Brown* v. *Dunckel*, 46 Mich. 32.) The verdict or finding of fact is conclusive, if there be any circumstances from which the intention might have been inferred. (*Archibald* v. *Argall*, 53 Ill. 309; *Seltzer* v. *Coleman*, 32 Pa. St. 493; *Myatts* v. *Bell*, 41 Ala. 232; *Keerl* v. *Bridgers*, 10 Smedes & M. 612; *Townsend* v. *Stevenson*, 4 Rich. 63.) The only question for this court is whether a *prima facie* case was made. (*Jarnatt* v. *Cooper*, 59 Cal. 706; *Ward* v. *Waterman*, 85 Cal. 504.) The possession of the old note, alone and unaided by any other circumstance, was sufficient to create a presumption of its payment. (*Turner* v. *Turner*, 79 Cal. 566; Code Civ. Proc., sec. 1963, subd. 9; Greenleaf on Evidence, sec. 527; *Brown* v. *Dunckel*, 46 Mich. 32;

*Zeigler* v. *Gray*, 12 Serg. & R. 42; *Lipscomb* v. *De Lemos*, 68 Ala. 592; *Carroll* v. *Bowie*, 7 Gill. 41.) The new note taken was negotiable. Any thing is payment which the creditor accepts as payment, and one note is paid by another note if the latter is accepted as payment; if the note given in payment be negotiable by the law merchant the presumption is that it was received as payment. (*Weston* v. *Wiley*, 78 Ind. 54; *Smith* v. *Bettger*, 68 Ind. 259; 34 Am. Rep. 256.) Finally, there is a conclusive reason why the creditor could not go back to the old surrendered note as a justification for the proceeding, viz., it did not surrender the new note. There can be no doubt about the fact that the new note was at least conditional payment. (*Tolman* v. *Smith*, 85 Cal. 287; *Happy* v. *Mosher*, 48 N. Y. 319; *Mooring* v. *Mobile etc. Ins. Co.*, 27 Ala. 258; *Ex parte Mathews*, L. R. 12 Q. B. Div. 508.) The new note must be kept alive (*Brown* v. *Cronise*, 21 Cal. 388, 389; *Shipman* v. *Cook*, 16 N. J. Eq. 253), and must not have been transferred away. (*Harris* v. *Johnston*, 3 Cranch, 311; *Donelly* v. *Columbia*, 119 U. S. 339.) And, upon the same principle, the creditor must surrender the new note before he can proceed upon the old one. This is recognized in the California cases. (*Brewster* v. *Bours*, 8 Cal. 506; *Griffith* v. *Grogan*, *supra*; *Crary* v. *Bowers*, 20 Cal. 85; *Comptoir D'Escompte* v. *Dresbach*, 78 Cal. 19; *Tolman* v. *Smith*, 85 Cal. 280.) The authorities in the other states are to the same effect. (*Burdick* v. *Green*, 15 Johns. 247; *Rayburn* v. *Day*, 27 Ill. 47; *Morrison* v. *Weltz*, 18 Md. 176. And see, also, *Miller* v. *Lumsden*, 16 Ill. 161; *Glenn* v. *Smith*, 2 Gill & J. 508, 509; 20 Am. Dec. 452; *Matthews* v. *Dare*, 20 Md. 275; *Hays* v. *McClurg*, 4 Watts, 454; *Spear* v. *Atkinson*, 1 Ired. 263; *Young* v. *Hibbs*, 5 Neb. 438; 2 Daniell on Negotiable Instruments, sec. 1275.) The above rule applies to a secured note as well as an unsecured one. (*Tolman* v. *Smith*, *supra*; *Weston* v. *Wiley*, *supra*.) The instrument in question was, in effect, a mortgage, and did not pass the legal title. (*McMillan* v. *Richards*, 9 Cal. 411; *Cormerais* v. *Genella*,

22 Cal. 123; *McLane* v. *Placerville etc. R. R. Co.*, 66 Cal. 612; 1 Jones on Mortgages, sec. 62.   And see, also, *Dutton* v. *Warschauer*, 21 Cal. 621; 82 Am. Dec. 765; *Bludworth* v. *Lake*, 33 Cal. 264; *Heyland* v. *Badger*, 35 Cal. 413.) If there be any doubt as to whether an instrument was intended as a mortgage or a deed of trust, such doubt should be resolved in favor of a mortgage with the power of sale.   (*Godfrey* v. *Monroe*, 101 Cal. 227, 228.)

HENSHAW, J.—Action to quiet title.   The appeal is from the judgment and from the order denying a new trial.

On the twenty-second day of May, 1868, Denis Mahoney, the then owner of the lands in controversy, was indebted to the Savings and Loan Society in the sum of $20,000, gold coin of the United States, for moneys borrowed.   Upon that date he executed, as party of the first part, a deed of trust to Burr and Dean as parties of the second part; the Savings and Loan Society, as party of the third part, was the beneficiary of the trust, which was for the following declared purposes:

"To secure the payment to the party of the third part of said indebtedness, and all further indebtedness of the party of the first part to the party of the third part that may be contracted during the continuance of this trust, not exceeding $35,000 at any one time, whether evidenced by promissory note or otherwise, whether for interest, insurance, or for moneys expended in and about said premises for repairs, taxes, liens, or encumbrances."   The parties of the second part and the party of the third part, their successors and assigns, are expressly authorized to pay all taxes, assessments, and liens then subsisting, or which might afterward be imposed, upon the premises, to keep the buildings on said premises insured against loss by fire, and to make such repairs and improvements on said buildings as to them may seem best.   "These trusts shall continue," declares the instrument, "as security to the party of the third part and its assigns for the repayment in gold coin

of the United States of the moneys so borrowed and received by the party of the first part, and the interest and premiums thereon, and of all amounts so paid out as aforesaid, . . . . and for the repayment in like gold coin of all moneys that may be hereafter loaned and advanced, and all sums of money, with interest thereon, due or to become due from the said party of the first part to said Savings and Loan Society, or their assigns, or to said trustees, whether the same be evidenced by promissory notes or otherwise, and all accruing accounts and balances, together with the reasonable expenses of this trust, and $2,000 in gold coin of the United States as counsel fees, which shall become due and payable by the party of the first part to the parties of the second part immediately upon any default made or suffered by the party of the first part in any of the payments afore-said." The instrument next provides for a reconvey-ance to Mahoney, his heirs and assigns, upon payment at maturity, and upon demand of all moneys advanced, laid out, and expended under and in pursuance of the trust, with interest. It is then provided that in case of default, upon demand of the party of the third part, it shall be lawful for the parties of the second part "to sell the above-granted premises, or such part thereof as, in their discretion, they shall find it necessary to sell in order to accomplish the objects of these trusts, in the manner following, namely." It is further provided that after publication, and on the day of sale so advertised by publication, or upon the day to which the sale may be postponed, "they may sell the property so advertised, or any portion thereof, at public auction to the highest cash bidder." The Savings and Loan Society was au-thorized to bid and purchase at the sale, and the parties of the second part were to execute to the purchaser or purchasers a deed of conveyance of grant, bargain, and sale of the aforegranted premises. Out of the proceeds of the sale the party of the third part was to be reim-bursed, costs and expenses of the sale and counsel fees were to be retained, and the balance or surplus, if any,

paid over to Denis Mahoney, his heirs or assigns. The
instrument finally declares that the recitals given in
such deed to the purchaser shall be conclusive proof of
the default and due publication of notice, and the deed
with such recitals shall be effectual and conclusive
against the party of the first part, his heirs and assigns,
and all other persons.

On the sixth day of March, 1869, Denis Mahoney
executed to John M. Burnett a deed of trust, whereby
and wherein he "granted, bargained, sold, aliened, re-
leased, and conveyed the land in controversy to Burnett,
upon trust, to receive the issues, rents, and profits of
said premises, and apply the same, or such portion
thereof as shall be necessary, for the support, mainte-
nance, and education of the nine children of said Denis
Mahoney, and to convey to the survivors of them, upon
the youngest attaining his majority, equal, undivided
portions thereof." This instrument further provides:
" And in case it should become advisable, in the judg-
ment of the said Denis Mahoney and Burnett, to make
improvements upon said property, the said trustee is
hereby authorized to raise money by mortgage or other-
wise on said property, or such part thereof as may be
necessary for that purpose, and to pay the same, and all
charges and interest thereon, out of the rents and profits
of the whole of said property, after the application of
so much thereof as may be necessary for the support,
maintenance, and education of said children." This
instrument was duly recorded upon the eighth day of
March, 1869, and, "from and after the recording thereof,
plaintiff and Burr and Dean had full knowledge of said
deed and its contents."

Sundry sums of money were expended by the Savings
and Loan Society to release the property from liens of
taxes and street assessments, other sums for insurance,
still others for the improvement of the property. All
of these sums were moneys which it was authorized to
expend, and no expenditure was made upon the property
not contemplated by and included within the terms of

the trust deed.  Default having been made by Burnett in his payments, the Savings and Loan Society made application to Burr and Dean to sell the property, or such part thereof, as, in their discretion, they should find necessary to sell in order to accomplish the objects of the trust.  Publication was then made in the manner prescribed by the trust.  The conditions of the sale were set forth in the notice as required.  Burr and Dean " found it necessary to sell all of said property," and " did sell the property at public auction to the highest cash bidder therefor, and for gold coin of the United States, and at such sale said Savings and Loan Society became the purchaser of the land and premises so sold at and for the sum of $17,250 cash, gold coin of the United States, said Savings and Loan Society being the highest and best bidder therefor, and said sum being the highest amount bid therefor at such sale."   Thereafter Burr and Dean executed and delivered to plaintiff their deed, as contemplated by the trust, and containing the recitals therein provided for.  Said deed was duly acknowledged and recorded on the ninth day of February, 1882.  " On the twelfth day of October, 1878, in consideration of the indebtedness then due and owing upon said last-mentioned promissory note, and under the provisions of said last-mentioned deed of trust to the plaintiff herein, and in consideration of further indulgence granted thereon by plaintiff, the said Denis Mahoney and said John M. Burnett, as trustee as aforesaid, executed their certain indenture," renewing and continuing their liability and obligation to the Savings and Loan Society upon that certain promissory note for $4,565, dated November 13, 1873, and upon the guaranty thereafter executed by said John M. Burnett, and "each undertook and promised to pay to the Savings and Loan Society the note and all sums of money remaining unpaid, or hereafter to become due thereon, and jointly and severally confirmed and continued until full payment of all indebtedness now owing, or hereafter to become due, the trusts created, and the grants made by

that certain deed of trust executed by said Denis Mahoney to E. W. Burr and Benjamin Dean, bearing date May 22, 1868."

" On the twenty-fifth day of May, 1871, money was required for the purposes of said property, and for making repairs and additions to the buildings and improvements thereon, and, on the fifth day of March, 1872, additional money was required for the purpose of protecting said land and improvements and paying certain street assessments theretofore imposed and levied, and which were then a charge and lien thereon, and plaintiff loaned and advanced said further sums of money to be used, and which were used, for the purposes aforesaid, to wit, on said twenty-fifth day of May, 1871, the sum of $500, and on said fifth day of March, 1872, the sum of $650." On these dates Denis Mahoney and John M. Burnett, " claiming to act as trustee," executed and delivered to plaintiff their promissory notes for these amounts. Burnett signed as trustee of the Mahoney estate. Each of these notes was declared by the makers to be secured by the deed of trust executed by Mahoney to Burr and Dean.

On November 13, 1873, there had been paid of the original indebtedness of $20,000 all but $2,000. There were likewise due and owing to the bank the two promissory notes above mentioned, and certain sums paid for taxes upon the property. More money was required on the thirteenth day of November, 1873, by Mahoney and Burnett, " for the purpose of protecting said property and paying certain street assessments which had been imposed upon it, and which were then a charge and a lien upon it." Mahoney and Burnett, as trustee, were without funds to pay such assessment, and on said thirteenth day of November, 1873, the plaintiff, at the instance and request of said Mahoney, with the knowledge and concurrence and at the request of Burnett, claiming to act as trustee, loaned and advanced the full sum of $249 in gold coin, " with which to pay, and which was used to pay, such street assessments, and to discharge the lien thereof

upon said real property." The sums above mentioned, with interest, including the $249 last referred to, aggregated the sum of $4,565, and on this day Mahoney and Burnett executed and delivered to plaintiff their promissory note for that amount, in which it was declared that "this note is secured by deed of trust, duly stamped according to law, made by Denis Mahoney to E. W. Burr and B. D. Dean, dated the twenty-second day of May, 1865." The note was signed "Denis Mahoney, John M. Burnett, Trustee of Mahoney Estate."

The quotations are from the findings.

1. The deed from Mahoney to Burr and Dean is not a mortgage, but a deed of trust. The decisions of this court upon such instruments have never been in flux; but, to the contrary, have been set and consistent since first they came before it. Moreover, this precise form of deed has upon more than one occasion been construed and upheld. (*Koch* v. *Briggs*, 14 Cal. 262; 73 Am. Dec. 651; *Thompson* v. *McKay*, 41 Cal. 221; *Fuquay* v. *Stickney*, 41 Cal. 587; *Whitmore* v. *San Francisco Savings Union*, 50 Cal. 149; *Grant* v. *Burr*, 54 Cal. 300; *Bateman* v. *Burr*, 57 Cal. 480; *Durkin* v. *Burr*, 60 Cal. 360; *Savings & Loan Soc.* v. *Deering*, 66 Cal. 281; *Partridge* v. *Shepard*, 71 Cal. 477; *More* v. *Calkins*, 95 Cal. 435; 29 Am. St. Rep. 128.) It transferred the legal title to the trustees, while Mahoney retained the right to a reconveyance upon payment, and to a sale as provided in case of default. Nothing in *Powell* v. *Patison*, 100 Cal. 235, can be construed as militating against the interpretation which has thus invariably been given. Moreover, in that case the instrument under consideration was not brought up for review.

2. The trial court, regarding the transaction of November 13, 1873, found that the note for $4,565, made by Mahoney and Burnett, "was taken and received by the Savings and Loan Society in payment and satisfaction and extinguishment of all sums of money then due it by Mahoney or Burnett, and of all claims and demands which it then had against said Mahoney and Burnett, or

either of them." So finding, it properly concluded that by this payment the trust was extinguished, except as to the duty of the trustees to reconvey, and that their deed after sale was in contravention of the trust and void. As is said in the first brief filed by respondents' counsel: " Our whole argument in this case proceeds upon this proposition, that the debt originally secured by the Burr and Dean deed having been paid by the $4,565 note and the novation of the original indebtedness, the deed by Burr and Dean to plaintiff, being in contravention of the trust, was absolutely void, and conveyed no title whatever." Divers questions have been raised in later briefs filed by other counsel for respondents; but, as said, this finding, with its logical sequitur in the conclusions of law, was the determinative point in the trial court.

The finding is attacked as wholly unsupported by the evidence. By respondents it is contended that there is at least a conflict of evidence, and that under the rule it will not be disturbed. The evidence said to raise a conflict is the presumption that an obligation delivered up to a debtor has been paid, that the ordinary course of business has been followed (Code Civ. Proc., sec. 1963, subds. 9, 20), and the circumstances of the cancellation and surrender of the $20,000 note, the satisfaction and cancellation of it upon the books of the bank, and the taking of the new note, to which Burnett affixed his signature as joint maker with Mahoney. Appellant claims that there is no evidence to support the finding that the note was entered as satisfied and canceled upon the books of the bank. There is no direct evidence to that effect. The books of the bank were not introduced, and that part of the finding, if it has support, must derive it from the inference drawn from the fact of delivery and its circumstances—a deduction from this fact warranted by the course of business. (Code Civ. Proc., sec. 1960, subd. 2.) But disputable inferences or presumptions, while evidence, are evidence the weakest and least satisfactory. They are allowed to stand, not against the

facts they represent, but in lieu of proof of them. The fact being proven contrary to the presumption, no conflict arises; the presumption is simply overcome and dispelled. It is the general rule that one executory contract does not extinguish another. It is also the rule that there must be an express agreement or understanding to that effect before another note, bill, or check extinguishes and satisfies the indebtedness evidenced by an earlier one. Without multiplying authorities upon these propositions it is sufficient to refer to *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, where the California cases are collated. In passing it may be said that it is a matter of grave doubt whether the finding under consideration fills the required measure as a finding. It is silent as to any *agreement* between the parties, and merely declares that the $4,565 note was *received* in payment. (*Comptoir D'Escompte* v. *Dresbach, supra.*) But conceding, though not deciding, that the finding is sufficient in this regard, it is without evidence to sustain it. The presumptions and inferences must give way to the facts, as testified to by witnesses who were parties to the transaction; and, as to the evidence of these witnesses, there is not only no conflict, but it is singularly harmonious in showing that the note was neither given nor received in payment of the pre-existing indebtedness.

Burnett testifies that he and Mahoney went to the bank for more money; that Burr thought they should "clear up" the small notes and give a new note for the balance, which was done; that he signed the note as trustee because Burr required it to be done; he (Burr) thought it should be done for the security of the bank.

"Q. Now, when you and Mr. Mahoney went to the bank, and this note for $4,565 was executed, it was not for the purpose of paying off the $20,000 note? A. No, sir. Our purpose was, as Mr. Burr expressed it, to clean up these two notes and whatever balance was necessary —to clean up whatever was outstanding there.

"Q. Well, what was the purpose of your going there? It was not to pay the $20,000 note? A. No, sir.

"Q. But to get more money wherewith to pay these charges on the property? A. Yes, sir.

"Q. The intent of this note was simply to aggregate the existing amounts in one sum and to evidence the indebtedness by this note. That was the purpose of giving the one note, as you have related, was it not? A. That was the intention."

Burr, the other party to the transaction and president of the bank, testified: "It was at my suggestion that the consolidation was made into this one note; the cashier probably suggested it to me that we had better make it into one note. The consolidation was merely to facilitate the book-keeping of the bank."

"Q. Under what circumstances was this note for $4,565 made and taken? A. At the exclusive discretion of the president. Not for the purpose of paying any thing, but to consolidate the debt, in the discretion of the president, without reference to the board."

Such is the unconflicting testimony.

The circumstances of the transaction, it is true, may be used to determine the character of the exchange. But the circumstances, to prevail, must be such as to establish the *mutual agreement* of the parties. (*Hart* v. *Boller*, 15 Serg. & R. 163; 16 Am. Dec. 536; *Brown* v. *Dunckel*, 46 Mich. 32.) Here the circumstances, so far from raising a conflict, are in perfect adjustment to the acts and declarations of the parties. Burnett's evidence shows that he *believed* that in signing as trustee he was binding the interests of his beneficiaries, as the money was all used for the purposes of the property. The $4,565 note itself declares in terms that it is secured by the bank's deed of trust. Burnett and Mahoney subsequently asked for postponement of the sale about to be made under the terms of the trust, and by writing again solemnly ratified and confirmed the instrument. Nor, if the rule of knowledge of the law invoked by respondents' counsel be applied in all rigidity, is the situation of the parties to this transaction altered in the slightest; for if, as counsel contend, the agreement was one

of satisfaction and payment, and, if the bank was chargeable with this knowledge, so also were Burnett and Mahoney. Then Burnett and Mahoney should have immediately demanded a reconveyance, but they never did. They should not have inserted the misleading clause in the $4,565 note, securing it by the extinguished trust deed, but they did. They should not have asked a postponement of the sale, and ratified in writing the trust deed, but should have enjoined the sale, and had a court of equity declare the trust satisfied and discharged. Each and every circumstance points irresistibly to the one conclusion that there was no agreement of payment between the parties, and that the $4,565 note was not accepted for such purpose. And this, aside from the consideration, which nevertheless is important, that, if the bank had taken the $4,565 note in payment, it was taking an unsecured debt for one fully secured. This fact alone, it is uniformly held, raises a strong presumption against payment, whether the new paper be by the same maker, or, as here, bears an additional name. (2 Daniell on Negotiable Instruments, 4th ed., secs. 748, 1260, et seq; 1 Jones on Mortgages, 4th ed., sec. 924, et seq; *Pinney* v. *Kimpton,* 46 Vt. 83; *Dayton Nat. Bank* v. *Merchants' Nat Bank,* 37 Ohio St. 209; *Moses* v. *Trice,* 21 Gratt. 567; 8 Am. Rep. 609.)

Finally, it may be added that the facts certainly bring the finding within the rule declared in *Field* v. *Shorb,* 99 Cal. 662.

3. It is next contended by respondents that the optional payments or advances made by appellant, after it had actual knowledge of Mahoney's later deed to Burnett, could not be covered by the trust deed; that the sale was for a sum much larger than the amount with which the property was therefor chargeable; that this sum was fixed by appellant in its demand upon the trustees to sell; that appellant was the purchaser, with notice of these facts, and that the sale is, therefore, void.

The rule in this state as to optional advances made

by a prior mortgagee, though opposed elsewhere by authority of respectability (1 Jones on Mortgages, 5th ed., sec. 373), may be taken as declared in *Tapia* v. *Demartini*, 77 Cal. 387; 11 Am. St. Rep. 288: "But the lien of the mortgage cannot be enforced against subsequent encumbrancers of which the mortgagee has actual notice for advances or indorsements made or given after such notice. The notice must be *actual.* Constructive notice by the recording or subsequent encumbrances is not enough." And, notwithstanding the differences existing between a mortgage and an instrument like the one in question, the same rule may justly be made applicable to both.

The court found that, from and after the recording of the deed from Mahoney to Burnett, "plaintiff and Burr and Dean had full knowledge of said deed and its contents." This language is neither apt nor satisfactory. It leaves in uncertainty whether the court meant *actual* knowledge or the *constructive* knowledge which follows recordation. Under the latter interpretation it is insufficient. Actual knowledge alone will bind the prior mortgagor. Under the former interpretation the evidence does not support it in all its scope. The deed to Burnett was recorded March 8, 1860. Upon May 25, 1871, Burnett signed the $500 note to appellant as "Trustee of the Mahoney Estate." Assuming that this signature was sufficient to give the bank actual notice upon that date, no intendment of law to which our attention has been called would operate to throw that notice back more than two years to the date of the recordation of Burnett's deed; yet the record discloses no other prior actual notice.

However, appellant had actual notice at least as early as May 25, 1871, and, as most of the payments or advances were made after that date, the effect of them upon the status of the parties is yet to be determined. The situation on May 25, 1871, taking that as the date of the actual notice, is said by respondents' counsel to be sufficiently advantageous to support his contention.

Most of the moneys for which the property was sold were laid out after that date.

Powers of sale under trust deeds or mortgages, it is true, will be strictly construed (*Flower* v. *Elwood*, 66 Ill. 449; *Sears* v. *Livermore*, 17 Iowa, 297; 85 Am. Dec. 564), and the acts of the trustees in contravention of the trust are void (Civ. Code, sec. 870); but it does not follow that any sale made under such a power is void, or even voidable, *because* made for an amount greater than the secured debt. In *Spencer* v. *Annan*, 4 Minn. 542, relied on by respondents, the amount due was $964.62, and the notice of sale was for $1,606.60. The court said: "We do not hold that it is absolutely necessary to state with certainty the exact amount legally due, for a party under a mistake of law or fact may honestly claim more than by law he would be entitled to, and, if the other party is not shown to be prejudiced thereby, the sale should not be disturbed. The mortgagee may estimate the amount according to the strict terms of the contract, or may err simply in a computation of the interest, and if, under such circumstances, he claims more than he can legally recover, it does not necessarily vitiate the sale. Perhaps any amount within the terms of the contract may in good faith be claimed without affecting the legality of the notice. But we do hold that a party cannot arbitrarily or wantonly claim in his notice a sum which neither the terms of the contract nor any legitimate calculation based thereon will justify." It was found in that case that the sum claimed exceeded by more than one-half "the amount which any calculation based upon the note would produce," and, therefore, the sale was set aside as irregular under direct proceedings instituted for that purpose.

In *Ormsby* v. *Tarascon*, 3 Litt. 404, also relied upon, the sale was not only for an amount much larger than was due, and for an installment not due, but the circumstances evidenced actual fraud and collusion between the parties to the sale; and "for this reason," says the court, "the sale ought not to be allowed to stand." In

that case Ormsby was seeking under direct proceedings in equity to redeem, and it is finally held that the title obtained by the sale was not, under these circumstances, freed from this equity.

But, besides these cases cited by counsel, there are others elucidating the true principle. Thus in *Ramsey* v. *Merriam*, 6 Minn. 168, the case of *Spencer* v. *Annan*, *supra*, is discussed and distinguished. Any amount within the terms of the security, it is held, may be claimed in the notice, and, if the sale is for an actual excess, "there are other and more appropriate means of redress" than an action to set aside the sale, viz, an action to recover the surplus. So, in *Butterfield* v. *Farnham*, 19 Minn. 85, the amount due was $26,916; the sale was for $34,251, an excess of over $7,000. It was held that, in the absence of fraud or actual injury, the claiming of more than is legally due or stipulated for in the contract cannot affect the validity of the sale. That while a claim, which would necessarily have the effect to deter bidders, would be held fraudulent in law, there is no rule of law by which the claim of such an excess must be held necessarily to have such an effect; and under existing circumstances it cannot be said that it would do so. The doctrine of *Spencer* v. *Annan, supra,* is subjected to the modification that, even if the excess be arbitrarily and wantonly claimed, it will not affect the sale, unless its amount was such as to deter bidders. "As to the mortgagor and those claiming under him, they knew what was due. No false claim could affect them, and for the excess for which the property was sold the mortgagor had his recovery."

In *Bowers* v. *Hechtman*, 45 Minn. 238, it is said: "Perhaps there may be cases where the amount claimed to be due would be so excessive and so wholly unwarranted by any thing in the terms of the mortgage as to furnish in itself intrinsic evidence of fraud on the part of the mortgagee, and of consequent prejudice to the owner of the mortgaged premises. But the rule is that claiming in the notice more than is due on the mortgage will not

affect the validity of the sale, unless it appeared that it was done with a fraudulent purpose, or that it has resulted in actual injury to the mortgagor."

The rule may thus be stated: A sale under power for a larger sum than the amount due is valid in the absence of proof of fraud, or that the property or the rights of the mortgagor were injuriously affected, or that bidders were deterred from attending the sale. (*Jencks* v. *Alexander*, 11 Paige, 619; *Hamilton* v. *Lubukee*, 51 Ill. 415, 99 Am. Dec. 562; *Fairman* v. *Peck*, 87 Ill. 160.)

In this case the sums for which, in the aggregate, the property was sold were not only expressly contemplated by the deed of trust, but they were each and all paid out within the terms of the trust for the benefit of the property. If any one of them was a sum not properly chargeable in the notice of sale it was not because it had not been paid, and not because its payment contravened the trust, but solely because of the intervening rights of the beneficiaries under the Burnett deed. But the beneficiaries were not purchasers or encumbrancers for value. The consideration for which they received Mahoney's interest was a good consideration, but it was not a valuable one. The later payments or outlays by the bank were not optional advances taken by Mahoney and put in his own pocket. They are found by the court to be payments made to be used, and which were used, to pay street assessments and taxes, and to improve the property. They were all for the preservation and benefit, not only of appellant's security, but equally of the beneficiaries' interest in the land.

As to the payment of the taxes and other superior liens, it is sufficient to say that appellant could have paid them to protect its security, and held the property for such payments without any express authority. (1 Jones on Mortgages, sec. 358; *Mutual Life Ins. Co.* v. *Newell*, 28 N. Y. Supp. 913.) The right depends not upon express contract, but upon the doctrine of subrogation under the general principles of equity. As to many of the other payments, Burnett, as trustee, not only sanctioned and ratified them so far as he had

the power, but requested the making of them, both orally and in writing, and signed, as trustee, the promissory notes evidencing them.

Nor is it at all apparent that Burnett's acts in subjecting the interest of his beneficiaries to the terms of the Burr trust deed were in contravention of his trust and void. To make improvements he was authorized "to raise money, by mortgage or otherwise, on said property . . . . and to pay the same . . . . out of the rents and profits of the whole of said property, after deducting so much as may be necessary for the support of said children." The express power to raise money upon the property by mortgage *or otherwise* is conferred. He could not raise money "by mortgage on said property" without subjecting the corpus of the property to the lien of the mortgage. The direction for payment out of the rents and profits is not the designation of a fund within the meaning of the cases; it is simply a direction. To hold that the language means merely that, if he desired to make improvements upon the property, he could do so only out of the surplus rents and profits instead of investing them, renders meaningless and inoperative the power to mortgage. If the instrument meant only that, it should—as it easily could—have been aptly expressed.

But the determination of the main question under consideration is not essentially affected by the interpretation of the Burnett deed. It is apparent that the moneys for which the property was sold were actually disbursed under the terms of the trust; that there was no fraud in the bank's claim to recover them; that the payment of many of them was requested by both Mahoney and Burnett; that Mahoney and Burnett had actual notice of the amount for which it was proposed to sell the property, and the time of the sale; that the sale was from time to time postponed at their joint request; that they, with this knowledge, undertook to ratify the Burr trust deed until full payment of all indebtedness due from them, or either of them, to the bank.

Upon the other hand, it is not apparent that Mahoney, or the beneficiaries, or the property suffered in any of their rights under the sale, or that bidders, by reason of any of the acts of the bank, were deterred from attending it.

Moreover, this ground of attack seems never to have been presented in the trial court, and was not raised by the first brief of respondents here filed. The consideration apparently was not in the mind of the chancellor in deciding the case. Usually attacks such as this are made in direct proceedings, accompanied by an offer to do equity. No pleading in the case presents the proposition, nor is any offer made to restore to the bank any of the moneys by it admittedly paid. It cannot, under all these circumstances, be here held that the sale was either void or voidable.

4. The complaint pleaded ownership in plaintiff. The court in very voluminous findings set forth the specific probative facts and circumstances of the transactions of the parties, and went no further. Under its conclusions of law, separately stated, is found this language: "And, as conclusions of law, this court finds: That plaintiff was not at the time of the commencement of this action, or on the twenty-ninth day of December, 1881, or at any other times, the owner or seised in fee . . . . of the land in the complaint described." Respondents contend that this is a misplaced finding of fact, and that, not being attacked, it must stand and will support the judgment. In aid of this contention are cited *Jones* v. *Clark*, 42 Cal. 192; *Breuner* v. *Liverpool etc. Ins. Co.*, 51 Cal. 107; 21 Am. Rep. 703; *Smith* v. *Acker*, 52 Cal. 217; *Bath* v. *Valdez*, 70 Cal. 355; *Foot* v. *Murphy*, 72 Cal. 105; *Burton* v. *Burton*, 79 Cal. 490; *Millard* v. *Legion of Honor*, 81 Cal. 342; and *Spargur* v. *Heard*, 90 Cal. 228. Other cases could be added to this list, but an examination of them will disclose that they are alike in their essential features. In each of them the appellant was seeking to overthrow the judgment because of the alleged absence of a finding. A sufficient finding

had been placed in the conclusions of law, and in nearly, if not quite all, of the cases it was the finding of a simple, unmixed ultimate fact. Under such circumstances this court evinced a natural and strong unwillingness to consider so technical an objection, and to reverse a case fairly tried, and set aside a judgment justly given, because of a mere clerical misprision. So, in *Millard* v. *Legion of Honor, supra* (Mr. Justice McFarland speaking for the court), it said: "But surely the main object (of findings) was not to afford a cover under which a losing party might successfully set a trap to capture a just judgment." But the rule laid down in the above cases is not one which permits of extension. It was announced to aid the ends of justice, not to defeat them. Paraphrasing the language above quoted: Surely the main object of findings was not to afford a cover under which the prevailing party might successfully set a trap to hold an unjust judgment.

The statute imposes upon the judge the duty of stating separately his findings of fact and his conclusions of law. (Code Civ. Proc., sec. 633.) The reason is obvious —that the court may examine the facts found and see whether or not they justify the conclusions of law and the judgment supported by them. (*Emeric* v. *Alvarado,* 64 Cal. 603.)

It is true that ownership may be pleaded and found as an ultimate fact. No reference is needed to the numerous cases so holding. But it is equally true that ownership may be pleaded as a conclusion of law, and may be determined by the court as such a conclusion, and not as a fact. Thus, in *Turner* v. *White,* 73 Cal. 299, this court said: "It is perfectly true that in general an allegation that a party is the owner of real property is an allegation of an ultimate fact, and not of a conclusion of law. But, as held in *Levins* v. *Rovegno,* 71 Cal. 273, the same averment or statement may be of a fact or of a conclusion, according to the context." *Levins* v. *Rovegno, supra,* is precisely in point. There, as here, the court found, "*as a conclusion of law* that the defendants are the owners in fee simple," and this court, after

an elaborate discussion of the subject of findings, declared that the court below properly treated the ownership as a conclusion of law to be deduced from the facts found. So here, it was, by reason of the facts found, the previous payment by Mahoney, and the consequent extinguishment of the trust deed, that the court concluded that the trustees' deed to the bank conveyed no title, and that consequently plaintiff never was the owner. If it be not clear that the statement is one of fact, this court will be reluctant to take it from its context, and treat it as a fact. (Hayne on New Trial and Appeal, sec. 242.)

Still further, if it be regarded as a misplaced finding of fact, or a mixed matter of law and fact which should be treated as a finding, it is, nevertheless, a finding drawn from the special fact of payment. If full authority is not to be given to the declaration of the judge, who, by putting it in the conclusions, holds out that he has reached the result by the application of the law to the facts, at least some weight must be accorded to his action, unless the error is merely a misprision. Treating it then as a finding, it is a finding drawn from the facts previously found. But a general finding, drawn as a conclusion from facts previously found, cannot stand if the specific facts do not support it. (*People* v. *Reed,* 81 Cal. 76; 15 Am. St. Rep. 22; *Geer* v. *Sibley,* 83 Cal. 4.) The specific facts, as has been shown, do not support it.

For the foregoing reasons the order and judgment appealed from are reversed and the cause remanded.

GAROUTTE, J., VAN FLEET, J., MCFARLAND, J., TEMPLE, J., and BEATTY, C. J., concurred.

HARRISON, J., deeming himself disqualified, did not participate in this decision.

Rehearing denied.