[Civ. No. 8755.   Third Dist.   Jan. 24, 1956.]

MARY ELLEN ROWAN, Appellant, v. ANGELO
PEDROTTI, Respondent.

Alfred J. Hennessy and Julien R. Bauer for Appellant.

Lounibos & Lounibos for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment in an action brought by appellant to quiet her title to a residence in Petaluma which had been sold to respondent under a power of sale contained in a deed of trust of which he was a beneficiary.

Respondent is a single man in his middle seventies. In the latter part of 1945 he was living with his nephew who was married to appellant's sister-in-law. The two visited appellant and her family approximately twice a week and a cordial social relationship existed. Appellant had been recently widowed and was unable to find adequate living quarters for herself and her three children. In order to assist her, respondent furnished $10,500 with which she purchased the house and lot, which is the subject of this litigation. The appellant contended that the money was a gift to her from respondent; respondent said that he loaned her the money. The court found in accordance with his assertions. This finding is not here challenged.

The property was conveyed to appellant by two separate deeds executed on November 26 and November 27, 1945. On December 8th, appellant and respondent went to the office of appellant's attorney, where she executed a deed of trust which had been prepared at her request. It secured the payment of her promissory note in favor of respondent in the amount of $10,500 payable at the rate of $50 per month without interest. The note provided that in "consideration for the loan" appellant would furnish respondent board, room and personal laundry service for $50 a month to be credited upon the amount of the note. It may be said here that this obligation was carried out by appellant for a considerable period of time and until this controversy arose. Concerning the execution of the note and the deed of trust appellant testified that she executed them in order to assure to respondent a home, and at the same time protect her children's succession rights to the property, at a time when she was about to undergo a major operation which she might not survive. ■ After execution the note and deed of trust were left at the attorney's office. Six months later he recorded the deed of trust and thereafter, when the instrument was returned to him by the recorder, he mailed both the note and the deed of trust to appellant, stating in his letter that he sent the instruments to her for "delivery" to respondent. There was no direct testimony as to what instructions, if any, were given to the attorney concerning either the recordation of the deed of trust or the transmittal of the instruments to

appellant. She kept them in her possession from that time on and they were never physically handed over to respondent. Neither did she, until long after the receipt of the instruments, take any action by way of protest against the recording of the deed of trust. She received the instruments January 13, 1947, and six years later, on January 29, 1953, she began a suit to quiet title against the respondent, which suit was later dismissed without prejudice. On October 4, 1951, appellant recorded a request for copies of notices of default and sale. On September 15, 1952, the Sonoma County Land and Title Company, acting as the trustee substituted for the original trustee, sold the property to respondent at public sale for $10,693.13 and later conveyed the same to him by its trustee's deed. The trial court upheld the validity of the sale proceedings and adjudged respondent to be the owner of the property.

Appellant's first contentions are that there was no delivery of the deed of trust, that it was therefore void and that the sale proceedings thereunder and the trustee's deed vested no title in respondent. The record sufficiently supports the findings to the contrary.

"In view of the variety of circumstances under which delivery may be accomplished, it is impossible to state in exact terms what does or does not constitute delivery of an instrument sufficient to give it full operation as a deed. Generally, it may be said that the intention of the grantor is the controlling factor. . . [I]n cases where the intention to make delivery must be inferred from circumstances that are in their nature equivocal, the determination of the question becomes of extreme difficulty and depends so much on the subjective state of mind that the law can lay down no certain rule on the subject. Ordinarily then, the question of delivery is one of fact to be determined from the circumstances surrounding the particular transaction.

"No particular form of delivery is necessary to give effect to a deed. All that is required on the part of the grantor is that by either words or acts he make it manifest that he considers the instrument completely executed and the title to the property or interest described therein conveyed. . . .

". . . [M]anual transfer is not essential. Other conduct, accompanied by a clear intention to pass title, may be equally efficacious to establish delivery. Specifically, a grant not delivered into the possession of the grantee is deemed constructively delivered where the instrument (1) is understood,

by agreement of the parties at the time of execution, to be delivered, and the circumstances are such that the grantee is entitled to immediate delivery, . . ." (15 Cal.Jur.2d, "Deeds," §§ 87, 88.)

In this case the trial court did not accept the appellant's explanation as to why the deed of trust and the note were executed. Opposed to that explanation the following appears: The money with which the property had been purchased was loaned by respondent to appellant and so appellant was obligated to repay it. Respondent testified that the parties went to the office of the attorney in order that he might obtain "a paper to show." Respondent had little education, spoke English with difficulty, and a fair inference from what he said in view of the circumstances is that, having made the loan to appellant and the property having been purchased with the money he thus loaned, it was the understanding of the parties that a proper act on the part of both would be the execution of such documents as would show that the money had been loaned and was to be repaid. Coupled with the foregoing was the act of appellant in leaving the executed documents with her attorney, followed by his recordation of the instruments, by his return to her of the deed of trust and the note with a transmittal statement that he was returning the instruments to her for delivery to respondent. Appellant's silence for so long after recordation justified an inference that the attorney had acted upon instructions from her. From all of the facts and circumstances the court was justified in finding that, despite there being no manual transmission of the deed of trust and the note, they had been executed under such circumstances that the parties intended they take effect immediately upon execution and that they had been delivered.

■ Intermediate the execution of the deed of trust and the sale under the power therein contained, there had been a substitution of the trustee. It was the substituted trustee that conducted the sale proceedings. An officer of the second trustee company testified that there had been a substitution and that the covering documents had been recorded. He also said, however, that his records did not show that notice of the substitution had been given to appellant. Appellant herself did not testify that she had not received such notice, but rested for her proof of lack of notice upon the testimony of the officer of the trustee. She had received, however, notice of default and intended sale mailed to her by the

substituted trustee. She had also received notice of the time and place of sale, likewise mailed to her by the substituted trustee. She therefore knew, or was chargeable with knowledge, that a substitution had occurred. It is true that notice of default and of sale were not mailed to the addresses (there were two given) designated in her demand for notice, which she had recorded. Nevertheless, they were sent by registered mail to her at a different address, and she received and receipted for them. The failures of the trustee complained of were, under the circumstances here shown, irregularities which would not invalidate the sale, unless appellant could show that she was in some manner injured thereby. This she made no attempt to do. (*California Trust Co.* v. *Smead Investment Co.*, 6 Cal.App.2d 432 [44 P.2d 624]; *American Trust Co.* v. *deAlbergaria*, 123 Cal.App. 76 [10 P.2d 1016].)

The trial court found that on the date of sale appellant owed the respondent $10,693.13 and that the property was sold to the defendant for that sum. Appellant complains that there was never any issue before the trial court as to the exact balance unpaid upon the note and that appellant had, at the trial, presented only the issue that the sale proceedings were void. The court was justified in finding that the obligations were in default whether or not a finding was made as to the exact amount unpaid at the time of the sale. Respondent, having the right to have the property subjected to sale, does not lose the title he gained under the trustee's deed even if the sale was for a sum larger than the amount actually due. (*Savings & Loan Society* v. *Burnett*, 106 Cal. 514, 535, 536 [39 P. 922].) But appellant is correct in saying she made no issue as to the amount unpaid on the note at the time of sale. Respondent set up the sale proceedings and the trustee's deed as his source of title and under familiar law these affirmative allegations were deemed denied by appellant. However, the amount unpaid, save as to the fact of default, was immaterial and appellant made no attempt to produce evidence on that subject. She here complains that the unnecessary findings as to amount unpaid, followed as it was by a statement to the same effect in the judgment, has, in some way, prejudiced her. Certainly that is not true as to this case. We suppose appellant fears that, if she has a claim against the trustee, based on a failure to pay over to her any excess of amount received over amount unpaid, the court's finding will preclude her. But the trustee

is not a party to this suit and if in fact it is holding any sum payable to her it could not defend because of anything found or adjudged herein.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.