[Civ. No. 2023.    Third Appellate District.—November 5, 1919.]

A. B. ATKINSON, Respondent, v. GEORGE E. FOOTE et al., Appellants.

[1] MORTGAGES—FORECLOSURE—LIABILITY FOR SURPLUS.—A mortgagee who has purchased the mortgaged property under the decree of foreclosure is not liable for the surplus unless such surplus remains in his hands or possession.

[2] DEEDS OF TRUST—SALE UNDER—LIABILITY OF TRUSTEES FOR SURPLUS.—Even though a trust deed may contain no provision expressly imposing upon the trustees the duty of obtaining and turning over to the trustor any surplus remaining after payment of the debt, to secure which the deed was given, and the costs and expenses of sale, it would nevertheless be their duty to do so. The trustees in such a case are trustees for the trustor as well as for the beneficiary of the trust or lender of the money.

[3] EVIDENCE—INDEBTEDNESS—PRESUMPTION.—There is no presumption that one party is indebted to another; and if one claims that he has loaned money to another, he must prove his claim or demand in an action to recover the money.

[4] DEEDS OF TRUST—ACTION FOR SURPLUS—RECITALS IN DEED CONCLUSIVE.—In an action against the trustees under a deed of trust to recover the surplus on a sale of the trust property, the trustees are concluded by the statement in their deed to the purchaser that they received gold coin in payment, and they will not be permitted to contradict such recital by the claim that they received no cash or actual money from the sale of the property.

--------

1. Right of mortgagor or owner of equity of redemption to maintain action for money had and received for surplus received by mortgagee on sale of property, note, 44 L. R. A. (N. S.) 1041.

Right of junior mortgagee as to surplus upon a foreclosure sale under a senior mortgage, in a proceeding to which he was not a party, note, 20 L. R. A. (N. S.) 47.

[5] ID.—RULE AS TO FUTURE ADVANCES.—The rule with reference to future advances applicable to mortgages is applicable to trust deeds given entirely for the purpose of securing the payment of a debt or for the performance of any other act capable of being so secured.

[6] MORTGAGES—FUTURE ADVANCES—NOTICE OF INTERVENING ENCUMBRANCE.—The mortgage lien of a superior or prior mortgagee will not operate to secure optional advances made under such mortgage after such mortgagee has acquired actual notice of an encumbrance subsequent in point of time to his mortgage so as to defeat or impair the rights of the second encumbrancer.

[7] ID.—RULE WHERE FUTURE ADVANCES OBLIGATORY.—If the provision in the first or prior mortgage as to future advances is mandatory in its nature and it thus becomes obligatory upon the mortgagee to make such advances, actual notice or knowledge by the senior mortgagee of a subsequent encumbrance will not have the effect of taking from him the security of his lien for advances he is compelled by his contract to make.

[8] ID.—WANT OF NOTICE OF JUNIOR MORTGAGE—RIGHT OF SENIOR MORTGAGEE TO MAKE FUTURE ADVANCES.—When a second encumbrance is put upon property already hypothecated by mortgage to secure a debt, the senior mortgagee, under a clause in his mortgage providing for optional advances, may make such advances on the security of his mortgage if he has no actual notice of the second encumbrance. When additional advances are so made they extend the scope of the lien, and in doing so the mortgage as to such advances constitutes a new lien or encumbrance.

[9] DEEDS OF TRUST—NOTICE OF SALE UNDER JUNIOR DEED OF TRUST—FUTURE ADVANCES UNDER SENIOR DEED OF TRUST NOT SECURED.—The assignee of a senior deed of trust which provides for future advances who takes the assignment and makes future advances after the sale of the trust property under a junior deed of trust and the recordation of the trustees' deed to the purchaser, and after her attorney has actual knowledge of such sale, cannot claim that such advances are secured by the senior deed of trust.

[10] ATTORNEY AND CLIENT—AGENCY—NOTICE.—An attorney at law, when acting as such for his client, is an agent, and the rule that notice to an agent is constructive notice to the principal is applicable to an attorney or counsel when acting for another in a particular matter or generally in the affairs of the latter.

5. What amounts to a mortgage for future advances, note, 1 A. L. R. 1586.

Priority of mortgage to secure future advances over subsequent encumbrance, note, Ann. Cas. 1913C, 555; over mechanics' liens, note, 5 A. L. R. 398.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Zagoren for Appellants.

White, Miller, Needham & Harber for Respondent.

HART, J.—From a judgment in favor of plaintiff for the sum of $572 and costs, defendants prosecute this appeal.

On December 10, 1914, Alfred H. Borchard and Mabel Borchard executed two deeds of trust, conveying to trustees the same real property in the city of Sacramento, owned by them, the first deed of trust securing a promissory note for two thousand dollars, payable to Mary Phleger, and the second securing a promissory note for one thousand dollars, payable to the plaintiff. On February 5, 1917, no payments of principal or interest having been paid, plaintiff caused his trustees to sell the property, he becoming the purchaser thereof, and a deed to him from the trustees was recorded February 8, 1917.

On June 13, 1917, Luise Borchard, mother of Alfred H. Borchard, took an assignment to her from Mrs. Phleger of said first deed of trust and recorded said assignment on June 15, 1917. The property was sold, under said first deed of trust, on July 7, 1917, Mrs. Luise Borchard becoming the purchaser, and she received a deed from the trustees reciting that they had received for the property the sum of $2,720 in gold coin. Before any bids were received, the persons present, including the defendants, were informed that plaintiff was the owner of the property and claimed all the surplus over and above the amount due the holder of the first deed of trust. As soon as the final bid was accepted, demand was made upon the trustees for the surplus. The trustees, on July 16, 1917, served on plaintiff's attorneys a written notice setting forth that Luise Borchard, subsequent to the time of taking the assignment of said deed of trust and prior to the sale, had made certain advances to Mabel and Alfred H. Borchard, amounting to $589.78, claimed all of said advances to have been secured by the deed of trust, and which, together with the amount due her

for principal and interest and costs of sale, more than made up her bid of $2,720 for the property. The deed of trust provided for future optional advances.

It was stipulated at the trial by and between the attorneys for the respective parties, and agreed that said stipulation should be considered as evidence of the facts so stipulated, that, on the third day of May, 1917, an action was commenced in the superior court in which the plaintiff here was plaintiff and Alfred H. Borchard and Mabel Borchard, his wife, were defendants, for the purpose of recovering from defendants in said action possession of the property herein involved; that in the complaint filed in said action the plaintiff therein (plaintiff herein) alleged ownership in himself of said real property and further alleged his right to the possession thereof, and that the defendants named in said complaint were unlawfully depriving him of the possession of said property; that the prayer of the complaint filed in said action asked for restitution of the possession of the said premises to the plaintiff therein (also plaintiff herein); that H. W. Zagoren, attorney for the defendants herein, and George E. Foote, one of the defendants herein, were attorneys for the defendants in said action brought by the plaintiff herein for the restitution of possession of said premises, and that as such attorneys for the defendants therein they "appeared in open court on behalf of said defendants and filed pleadings therein." It was further stipulated that, if sworn as a witness in this case, Clyde H. Brand, an attorney at law of the city of Sacramento, and who was the attorney for Mrs. Phleger in the transaction resulting in the assignment by her of the trust deed and promissory note executed by Alfred H. and Mabel Borchard to trustees of said Mrs. Phleger to Luise Borchard, would have testified to the following facts, and that his said testimony, if given, should constitute a part of the evidence in this case: That prior to the assignment just mentioned, H. W. Zagoren, attorney for the defendants in this case, discussed with said Brand the matter of a proposed assignment to Luise Borchard of the said deed of trust, then held by Mrs. Phleger; that said Zagoren, at that time, stated to said Brand that he (said Zagoren) was acting as attorney for Mrs. Luise Borchard and that she was then contemplating the purchase of said deed of trust

from Mrs. Phleger, for whom at that time the said witness Brand was acting as attorney; that at the time of said discussion between said Zagoren and Brand, it was stated to Zagoren that the real property described in said deed of trust had been sold under a deed of trust of subsequent date to the Phleger deed of trust, executed to trustees of plaintiff Atkinson, and that record title to said premises, at the time of said discussion, which was prior to the assignment of the Phleger deed of trust to Mrs. Luise Borchard, stood in the name of said Atkinson; that at the same time, and prior to the said assignment to the said Mrs. Bochard, witness Brand stated to the said Zagoren that he had been endeavoring to secure from A. B. Atkinson, the plaintiff herein, the payment of certain assessments that had become a lien on the real property involved in this action, viz., Lot 89, Yoerk Court, in the city of Sacramento; that at the time of said conference between said witness, Brand, and said Zagoren, and prior to the assignment of said deed of trust by Mrs. Phleger to said Luise Borchard, the witness Brand showed to said Zagoren and delivered to him a certificate of title prepared, according to the witness' best recollection, by the Sacramento Abstract and Title Company, which said certificate certified that on its date, which was a few days prior to the said conference between the witness Brand and said Zagoren, title to said property was vested in said A. B. Atkinson.

The situation as developed by the evidence may thus be summarized: The plaintiff, the owner of the junior trust deed, upon default by the trustors or owners of the property conveyed to the trustees to pay the indebtedness secured by said deed, caused, after due proceedings, the real property to be sold in the manner prescribed by law in such cases, and became the purchaser of the property at said sale. He received the trustees' deed thereto and, thereupon, the legal title and the right to the possession of the property immediately vested in him. This deed to him was duly recorded. The trustors under the deed of trust, the younger Borchards, refused to deliver to him possession of the property and he brought an action in ejectment to recover possession. Attorneys Zagoren and Foote, the former the attorney in this action for the defendants and the latter one of the defendants here, were and still are (the ejectment

action is still pending and undisposed of) the attorneys for defendants in said ejectment action. After Atkinson became the record owner of said property, Mrs. Luise Borchard, mother of one of the original owners of the property, the trustors in the prior deeds of trust, bought and had assigned to her the said senior trust deed given by the younger Borchards to secure to Mrs. Mary Phleger the sum of two thousand dollars loaned by her to the said younger Borchards. In this transaction, the said attorney Zagoren acted as the attorney for Mrs. Luise Borchard. After Atkinson had acquired the title to the property in the manner above indicated, and subsequent to the time that she took over the Phleger trust deed, Mrs. Luise Borchard made further advances on the security of said deed to her son and daughter-in-law, the younger Borchards, original trustors in both deeds of trust. While all these transactions were being negotiated and consummated—that is, all transactions with reference to the property and the trust deed of Mrs. Phleger—Mr. Zagoren, the attorney for these defendants and also the attorney for Mrs. Luise Borchard, was in possession of actual knowledge of the fact that the record title to the property involved was in the plaintiff here. Moreover, we may assume, since he, too, was an attorney for the defendants, the younger Borchards, in the ejectment action and appeared and filed pleadings in said action on behalf of their clients, that defendant Foote was in possession of actual knowledge of the fact that, prior to the assignment of the Phleger trust deed to Mrs. Luise Borchard, the record title of the property was in the plaintiff herein.

Believing, on the facts so summarized, that he was entitled to the surplus of the amount for which the property sold over and above the amount due on the Phleger note and costs and expenses, exclusive of the advances made by Luise Borchard, the plaintiff brought this action to recover such surplus, which, it is alleged, amounts to $589.78, with interest from July 7, 1917.

The point first made by the appellants is that they are not liable for a surplus which they have never received, the fact being, as they contend, that at the time of the sale of the property by them to Luise Borchard under the Phleger deed of trust they received from her the promissory note for two thousand dollars executed to Mary Phleger, and re-

ceived Luise Borchard's receipt for $197.30 as interest and
costs of conducting the sale and for $589.78 further ad-
vances, and that they did not receive any cash gold coin.
They further contend that, if there exists in favor of the
plaintiff any action at all for the alleged surplus, it is
against the purchaser at the sale. The case of *Russell* v.
*Duflon*, 4 Lans. (N. Y.) 399, is cited as supporting the
above stated proposition. That case lays down these doc-
trines: "A mortgagee who, upon foreclosure of his mort-
gage by advertisement and sale under the statute, receives
only the amount due and expenses from the purchaser of
the mortgaged premises, is not liable as a trustee, to lienors
subsequent to his mortgage, for the surplus. The ordinary
agreement or condition assumed by a mortgagee to pay the
surplus to the mortgagor is not extended to subsequent en-
cumbrancers of the mortgaged premises." That case refers
to *Bevier* v. *Schoonmaker*, 29 How. Pr. (N. Y.) 411,
which sustained an action by the owner of an equity of re-
demption under a sheriff's sale, who was also the holder of
the lien on the mortgaged premises, next in order to the
mortgagee, who was himself the purchaser under a statute
of foreclosure, to recover the surplus money in the sheriff's
hands after the sale, and of that case it was said: "But
there the plaintiff stood in the shoes of the mortgagor, and
was the eldest judgment creditor, and the defendant had
the surplus moneys in his hands. The case of *Matthews*
v. *Duryee*, 45 Barb. (N. Y.) 69, recognizes the liability of
the party holding the surplus to an action by the party
entitled to it [in that case the widow of the mortgagor] to
recover it."

[1] Upon principle, it would seem to be unquestionably
true that the mortgagee who has purchased the mortgaged
property under the decree of foreclosure would not be liable
for the surplus unless such surplus remained in his hands
or possession. There is no agreement on a mortgagee's part
which binds him to pay over the surplus to the mortgagor.
Indeed, he is not interested in what disposition is made of
the surplus from a sale under a decree foreclosing a mort-
gage conducted by an officer of the court making the decree
and authorizing the sale. When he receives satisfaction of
the mortgage debt and interest and the costs and expenses
are paid, his interest in the transaction thereupon ceases,

and, as above stated, unless he himself retains the surplus, he is not liable to an action for the surplus by the mortgagor or a creditor of the mortgagor. In this case, however, a different situation is presented. In the first place, while it is true that a trust deed, like a mortgage, is given to secure a debt or the performance of some act capable of being so secured, and that its primary purpose is to secure the debt or the performance of such act, its legal characteristics are different from those of a mortgage. By it trustees, duly nominated and appointed by the lender of the money, are authorized to sell the property affected by the conveyance upon default in the payment of the debt or the performance of the act it was given to secure. [2] We apprehend that it will not be questioned that, even though a trust deed may contain no provision expressly imposing upon the trustees the duty of obtaining and turning over to the trustor any surplus remaining after payment of the debt, to secure which the deed was given, and the costs and expenses of sale have been satisfied, it would nevertheless be their duty to do so. Indeed, it cannot be doubted, from the nature of a trust deed given to secure a debt, that the trustees in such a case are as well trustees for the trustor as for the beneficiary of the trust, or, perhaps, it would be more accurate to say, the lender of the money, since both the latter and the owner of the property affected or covered by a trust deed are equally beneficiaries of the trust to the extent of their respective interests; and, therefore, it must be, in the very nature of the situation, the duty of the trustees, upon a sale of the trust property to satisfy the indebtedness it was given to secure, to see that they get possession of the excess, if any there be, over and above the sum necessary to satisfy the debt, etc., and to see that to the possession of the trustor such excess be delivered. Suppose it be true that trustees under a deed of trust have paid to the lender of the money more than was his due, even under an honest misapprehension of the amount actually and justly due the lender and secured by the deed, would it be contended that they would not be liable to an action by the trustor to recover the sum paid in excess of what was justly due the lender? Have trustees under such a trust no legal liability thrust upon them but merely to see that the lender of the money is paid his debt? In the sale of the property and

the payment of the debt do not the trustees act for the trustor as well as for the lender of the money? And is it not, then, their imperative duty to see that any excess of the sum for which the property was sold over and above that necessary to pay the debt, etc., comes into their hands as the trustees for the owner of the property and the same accounted for by them to the owner? No reasonable ground for returning negative answers to these questions can be suggested or conceived. They unquestionably, as above declared, become trustees of the trustor in the strictest sense when there is a surplus in their hands upon the sale after they have satisfied in full the obligation to secure which the trust deed was given.

Aside from the mere recital in the deed of the trustees to Mrs. Luise Borchard that she made additional advances to the younger Borchards after she (Mrs. Luise) became owner of the Phleger trust deed, there is absolutely no evidence in this record showing that Mrs. Luise Borchard ever made the advances referred to. The trustees (assuming that they received no actual cash or coin for the sale of the property, as they now claim is the fact), so far as we are advised by this record, acted upon the mere extrajudicial or unverified representation of the said Mrs. Borchard that, after she had acquired ownership of the Phleger deed of trust, she advanced to her son and daughter-in-law additional sums on the faith or security of said trust deed. If it is important in the decision of this case to know whether the trustees did or did not actually receive cash, then we remark that the burden was upon them to show that, as a matter of fact, they received no actual cash into their hands. The fact is undisputed that the property sold for an amount in excess of that which was necessary to satisfy in full the obligation due Mrs. Borchard on the Phleger obligation as it came into her hands. [3] There is no presumption that one party is indebted to another, and if such a presumption were applicable in any circumstances at all, it would be less so as to a contract like the one here which makes it optional with the proposed lender whether he will lend the money, or make advances to the borrower in addition to any money already loaned. But, as stated, there is no such a presumption of law in any case, and if one claims that he has loaned money to another, he must prove his claim or demand in an

action to recover the money. [4] But, however this may be, we hold that, if we concede that an action involving a case of this character will not lie against the trustees if they are not in actual possession of any surplus remaining after the sale of the property and the payment of the debt secured by the deed of trust under which they are acting or have acted as trustees, a reply to their claim that they received no cash or actual money from the sale of the property lies in the proposition that such claim is in that particular inconsistent with and contradictory to the recitals of their deed to their vendee, and we think that upon the question whether they did receive cash or gold coin they are concluded by the statement in that respect contained in their deed. Said deed, as we have shown, recited that the trustees received in *gold coin* the sum for which the property sold, viz., $2,720. The plaintiff had and has the right to rely upon the statement so made in the said deed as to the consideration therefor and the nature of such consideration, and to hold the trustees down to their declaration contained in the deed that they received from the sale of the property gold coin. In *Harvey* v. *Foster*, 64 Cal. 296, [30 Pac. 849], in which it appears that the mortgagee, at the mortgage sale conducted by the sheriff, bid in the property at a sum far in excess of the mortgage debt for the purpose of covering also an unsecured debt due the mortgagee from the mortgagor, and in which it further appears that the sheriff executed his deed to the mortgagee for the full amount of the indebtedness, both that secured and that unsecured, and that the sheriff set up that fact as a defense in an action against him by an attaching creditor of the mortgagor to establish the validity of his attachment lien as against such excess, the court said, at page 298: "The sheriff's return to the order of sale shows that he received at the mortgage sale the sum of $15,753 cash. He cannot make any defense inconsistent with his return. (Freeman on Executions, 450; *Ferguson* v. *Tutt*, 8 Kan. 370.) A sheriff is concluded by his return when it is set up by any party who may claim something under it. (Crocker on Sheriffs, 46.)" We think, as above suggested, that the principle thus declared applies with equal pertinency and force to the case here. The trustees cannot declare in their deed that they have received, as a considera-

tion for the conveyance, a certain sum in cash or gold coin, and then be permitted thereafter, in an action by the owner to recover the surplus remaining after the debt to secure which the deed of trust was given has been paid, to say or set up the defense that they received no cash or money. Indeed, as we have shown, if there is or ought to be an excess in their hands after the debt is satisfied, such a defense would be no defense at all, and, as is further said in the case from the opinion in which we have just made an excerpt, so it is in principle equally true in a case of this character: "Where at a judicial sale property brings more than the amount of the execution, if the officer fails to pay the excess, or see to it that it is paid to the defendant, he and his sureties on his official bond are liable in an action at the suit of the defendant for the excess. (*State* v. *Noel,* 5 Ired. (27 N. C.) 357.)"

But there is still another phase of the case to which consideration is to be given and which involves questions to which the arguments in the briefs are principally addressed, viz., whether, upon the assumption that Mrs. Luise Borchard made the additional advances claimed by the trustees, she made such advances with or without that notice of the subsisting rights of the plaintiff which determines her right to do so.

[5] The rule with reference to future advances applicable to mortgages is, of course, applicable to trust deeds given entirely for the purpose of securing the payment of a debt or for the performance of any other act capable of being so secured. (*Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 533, [39 Pac. 922].)

In *Tapia* v. *Demartini,* 77 Cal. 383, [11 Am. St. Rep. 288, 19 Pac. 641], the rule is stated as follows: "The lien of the mortgage cannot be enforced as against subsequent encumbrances, of which the mortgagee has actual notice, for advancements or indorsements made or given after such notice. The notice must be *actual.* Constructive notice, by the recording of subsequent encumbrances, is not enough. (*Ackerman* v. *Hunsicker,* 85 N. Y. 52, 39 Am. Rep. 621; *Ward* v. *Cook,* 17 N. J. Eq. 93, 99; *Shirras* v. *Caig,* 7 Cranch, 34, [3 L. Ed. 260, see, also, Rose's U. S. Notes]; 1 Jones on Mortgages, sec. 372; 3 Pomeroy's Equity Jurisprudence, sec. 1199.)"

In *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 533, [39 Pac. 922], *supra,* our supreme court expressly approves the statement of the rule as made in *Tapia* v. *Demartini,* declaring that "the rule as to optional advances made by a prior mortgagee, though opposed elsewhere by authority of respectability (1 Jones on Mortgages, 5th ed., sec. 373), may be taken as declared in *Tapia* v. *Demartini,* 77 Cal. 387, [11 Am. St. Rep. 288, 19 Pac. 641]," following which is the statement of the rule above quoted herein from the Tapia case.

But, in section 373 of 1 Jones on Mortgages, sixth edition, the rule is broadly stated in the text as follows: That "the rule that a recorded mortgage expressed to cover future advances has priority in all cases over subsequent conveyances and encumbrances has full support in recent discussions, and must now be regarded as a settled rule of law. Notwithstanding all the distinctions and refinements which have been introduced into the law of this subject by the many conflicting adjudications upon it, there is strong reason and authority for the rule that a mortgage to secure future advances, which on its face gives information enough as to the extent and purpose of the contract, so that anyone interested may by ordinary diligence ascertain the extent of the encumbrance, whether the extent of the contemplated advances be limited or not, and whether the mortgagee be bound to make the advances or not, will prevail over the supervening claims of purchasers or creditors, as to all advances made within the terms of such mortgage, whether made before or after the claims of such purchasers or creditors arose, or before or after the mortgagee had notice of them. If the mortgage contains enough to show a contract between the parties, that it is to stand as a security to the mortgagee for such indebtedness as may arise from the future dealings between the parties, it is sufficient to put a purchaser or encumbrancer on inquiry, and if he fails to make it, he is not entitled to protection as a *bona fide* purchaser."

[6] The rule as thus stated is deduced from a number of decisions from as many different jurisdictions, and it only goes to show that there is a decided contrariety of judicial views upon the subject, and, while it is to be readily conceded, as the learned author declares, that the rule as he

states it is supported "by strong reason and authority," it must at the same time likewise be conceded that the rule as declared in the California cases above named is also sustained by strong reason and eminent authority. Indeed, the learned author himself so stated the rule in the earlier edition of his admirable work on Mortgages. The California rule, as we may with propriety denominate it, would stand as ample protection to the senior mortgagee whose mortgage provided for optional future advances, for having *actual* notice of the junior encumbrance he would, if a prudent business man and the property was insufficient security to indemnify both mortgagees and additional advances by him, refuse to make the additional advances. On the other hand, it might happen that, although the property hypothecated might be amply sufficient to secure all the moneys loaned and such additional advances up to the limit specified in the mortgage as the mortgagee in his discretion might make, the mortgagee would, in the exercise of his optional right, refuse to make further advances. Let it then be supposed that the mortgagor, being in need of more money than he had in the first instance received from the mortgagee, secured a loan from a third party, giving to the latter a second mortgage on the property as security for the loan, and, further, suppose that thereafter the senior mortgagee, with actual notice of the second encumbrance, should elect to make further advances under his mortgage and that the mortgagor, although in doing so acted in bad faith with the second mortgagee, accepted such advances up to the limit fixed in the senior mortgage, can it not then readily be seen how the rights of the second mortgagee could be wholly destroyed if the rule, as stated by Mr. Jones, were applied to the transaction? We are not only bound by the rule as it is declared and applied by our own supreme court, but are fully persuaded that it rests upon equally as sound reason as the rule accepted by the learned author referred to, and that its application is no more likely to lead to injustice or inequitable results than the other rule. [7] Of course, we may suggest, if the provision in the first or prior mortgage as to future advances is mandatory in its nature and it thus becomes obligatory upon the mortgagee to make such advances, then the rule is different, and should be, for it would be manifestly unsound to hold that actual notice or knowl-

edge by the senior mortgagee of a subsequent encumbrance would have the effect of taking from him the security of his lien for advances he was compelled by his contract to make. Be that as it may, however, the rule in this state, repeating it, is that the mortgage lien of a superior or prior mortgagee will not operate to secure optional advances made under such mortgage after such mortgagee has acquired *actual* notice of an encumbrance subsequent in point of time to his mortgage so as to defeat or impair the rights of the second encumbrancer.

Counsel for the appellants contend that when Mrs. Luise Borchard made the advances referred to she was without actual notice of the rights of Atkinson growing out of his mortgage, and that, therefore, her right to make advances at the time she claims that she did was not affected or foreclosed by the fact of the existence then of the said second mortgage.

In regard to this question of notice, we conceive it to be proper first to consider what effect the recordation of the trustees' deed conveying the property to plaintiff had upon the rights of the parties. And, *in limine,* we remark that it is clear, from the undisputed evidence, that as a matter of fact, as well as of law, Luise Borchard made no additional advances, notwithstanding it may be true that she paid for the younger Borchards an obligation existing against them but which was not secured by the Phleger deed of trust prior to the acquisition of said deed by Luise Borchard. As seen, the evidence conclusively shows that, at the time she (Luise) assumed and satisfied the said obligation, the younger Borchards had been, by virtue of the sale and transfer of the property to the plaintiff, divested of any and all legal and equitable interest in the property. They were then no longer owners of the property and, therefore, had lost their status as trustors under the Phleger deed, the plaintiff having been, in relation to said deed, transferred to their shoes and subrogated to all rights which they at any time had in the property. The plaintiff, in other words, upon acquiring the title of the younger Borchards to the property, became, in legal effect, the trustor under the Phleger deed of trust.

That, at the time of making the alleged advances, Luise Borchard had the notice prescribed by law of the deed con-

veying the property to Atkinson is quite obvious, as we shall now proceed to show.

Section 1213 of the Civil Code declares, *inter alia*: "Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers *and mortgagees.*" This rule is, of course, applicable as well to trust deeds given to secure a debt. (*Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 533, [39 Pac. 922], *supra.*)

[8]   The California rule, as we have shown, is that, when a second encumbrance is put upon property already hypothecated by mortgage to secure a debt, the senior mortgagee, under a clause in his mortgage providing for optional advances, may make such advances on the security of his mortgage if he has no actual notice of the second encumbrance. When additional advances are so made, they extend the scope of the lien, and in doing so the mortgage as to such advances constitutes a new lien or encumbrance.

[9]   It follows that Mrs. Luise Borchard, having made the alleged advances after the due recordation of the deed to Atkinson, is to be classed among the persons who, by virtue of the provisions of section 1213 of the Civil Code, are as subsequent mortgagees charged with constructive notice of the contents of the deed conveying the property to Atkinson, and she was bound and concluded by such notice. To be more explicit and stating the proposition concretely, the situation is this: That so long as the second trust deed existed as a lien upon the property, and before the sale of the property thereunder, actual notice of said lien by Mrs. Luise Borchard was necessary to cut off the lien of her deed as security for additional advances, but, when the transfer of the property to the plaintiff through the sale under the second deed of trust occurred, the said deed ceased to exist, and there was then no encumbrance on the property by virtue of the Atkinson trust deed, and upon the due recordation of the deed from the Atkinson trustees to Atkinson, Luise Borchard was then, as a subsequent encumbrancer so far as were concerned any additional advances she might have made under her deed of trust, charged with constructive notice of the conveyance to the plaintiff, and this notice, under section 1213 of the Civil Code, was all that was re-

quired to vitiate the effect of the lien of her deed so far as
were concerned any additional advances so made. This
proposition obviously does not conflict with the rule as to
the necessity of *actual* notice to the senior mortgagee of
the subsequent encumbrance before the mortgage can become
abortive as a lien to secure advances made after the second
encumbrance has come into existence. We are firmly per-
suaded that this proposition is logical and sound; but, if we
were compelled to yield our ground as to that position,
we think that the plaintiff should prevail upon the proposi-
tion that Mrs. Luise Borchard, as a matter of law, had more
than the constructive notice of the Atkinson deed of trust
and of the conveyance of the property to Atkinson than is
established by a mere recordation of a deed of conveyance.

It is not disputed that the attorney who acted for Mrs.
Luise Borchard in the transaction culminating in the pur-
chase by and transfer to said Mrs. Borchard of the Phleger
deed of trust as well as one of the trustees under said trust
had actual knowledge, prior to and at the time of said
transaction, not only of the Atkinson deed of trust, but also
of the sale and conveyance of said property to Atkinson
under his deed of trust. They not only had such knowledge
of these facts prior to and at the time Mrs. Luise Borchard
took over the Phleger deed, but at the time had actual
knowledge of the recordation in the office of the county re-
corder of the conveyance of the property to Atkinson.

The cases, in declaring that in such as this the lien of the
senior mortgage will not operate to secure advances made
after there has been a subsequent mortgage given against
the property where such advances have been made by the
senior mortgagee with actual notice at the time of the
making of such advances of the existence of the subsequent
encumbrance, say, as illustrative of the kind of notice which
is not sufficient to charge the senior mortgagee with such
notice in such case, that "constructive notice *by the record-
ing of subsequent encumbrances is not enough.*" In the
present case, as we have shown, the attorney for Mrs. Luise
Borchard at and before the time the alleged advances were
made had *actual knowledge* of the fact of the existence of
the second trust deed. This knowledge he acquired while
he was acting as attorney for Luise Borchard in the transac-
tion whereby she became the owner of the Phleger deed, and

before she made the alleged additional advances. While this, as to Luise Borchard, was constructive notice only, yet it amounted to more than that mere constructive notice which is, by virtue of the statute, imparted to subsequent purchasers and mortgagees. It is actual *knowledge* acquired by an agent of a matter vital to a pending transaction the execution or consummation of which is within the scope of the agent's powers as such agent.

[10] An attorney at law, when acting as such for his client, is an agent, and the rule that notice to an agent is constructive notice to the principal is applicable to an attorney or counsel when acting for another in a particular matter or generally in the affairs of the latter. (*Watson* v. *Sutro,* 86 Cal. 500, 517, [24 Pac. 172, 25 Pac. 64].) An agent acts in the place and stead of the principal in the matter committed to the former by the latter. His (the agent's) acts, within the scope of his agency, are those of the principal, and his knowledge of facts relating to any transaction within the limits of his authority as such agent is his principal's knowledge. In short, the agent when negotiating a transaction for his principal is engaged in performing acts which he has been authorized by his principal to perform, and he is when so acting in contemplation of law himself the principal. (*Watson* v. *Sutro,* 86 Cal. 500, 517, [24 Pac. 172, 25 Pac. 64]; *Christie* v. *Sherwood,* 113 Cal. 526, [45 Pac. 820].) In the first mentioned of these cases, the court, at page 517, 86 Cal., [24 Pac. 177], discussing this very question, expressly approves the following statement of the principle on which the above-stated rule rests in the case of *The Distilled Spirits,* 11 Wall. 367, [20 L. Ed. 167, see, also, Rose's U. S. Notes], Justice Bradley writing the opinion: ''The general rule that a principal is bound by the knowledge of his agent is based upon the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject matter of the negotiation, and the presumption will be that he will perform that duty. It will be of no avail to the purchaser that the agent omitted to communicate what he ascertained to his principal. (*Williamson* v. *Brown,* 15 N. Y. 359.) In other words, one who acts through another will be presumed to know all that the agent learns during the transaction, whether it is actually communicated

to him or not. There is no difference in this respect between actual and constructive notice; for if there were, an agent would be employed whenever it was convenient to remain in ignorance. (*Bank of United States* v. *Davis,* 2 Hill (N. Y.), 451–461.)''

It is true, of course, that, the purchase by Luise Borchard of the Phleger deed of trust having been consummated several months after her attorney in that transaction first acquired knowledge of the conveyance of the property to Atkinson upon the sale thereof under his deed of trust, the presumption that said attorney retained such knowledge, and had it present in his mind when the purchase by Luise Borchard was made, must depend upon the lapse of time and other circumstances. (*The Distilled Spirits,* 11 Wall. 366, [20 L. Ed. 167, see, also, Rose's U. S. Notes], *supra; Yerger* v. *Barz,* 56 Iowa, 77, [8 N. W. 769] ; *Christie* v. *Sherwood, supra.*) The circumstances of the two transactions with both of which the attorney for Mrs. Luise Borchard was connected in his capacity as an attorney or counsel afford no other reasonable inference than that the circumstance of the sale and conveyance of the property on the sale thereof under the trust deed to Atkinson was present in his mind when the said Mrs. Borchard acquired ownership of the Phleger trust deed. The time intervening between the date of the acquisition by Atkinson of title to the property and that at which Mrs. Luise Borchard acquired title to the trust deed of Mrs. Phleger was only a few days over four months. Moreover, the said attorney of Luise Borchard appeared as one of the attorneys for the younger Borchards in the action in ejectment brought by Atkinson against the former to secure possession of the property after he (Atkinson) had become the owner thereof. Furthermore, just prior to the consummation of the negotiations resulting in the transfer of the Phleger deed to Luise Borchard, said attorney consulted and discussed with Mrs. Phleger's attorney the Atkinson trust deed and the sale thereunder. All these circumstances could not well have escaped the recollection of said attorney. (*Christie* v. *Sherwood, supra.*)

Thus we have given this appeal extended and painstaking consideration, and after such consideration we are thoroughly and firmly persuaded that from every point of view

of which the case is susceptible no other just course is open to us but to affirm the judgment herein of the court below, and accordingly such is the order.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.