# CHARTZ *v.* CARDELLI

## No. 2841

August 1, 1929.                          279 P. 761.

*John M. Chartz,* for Appellant:

*Green & Lunsford,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

The appellant, Alfred Chartz, and the respondent, Carmelinda Cardelli, each sought a decree for the foreclosure of their separate mortgages upon the same land. The appellant was the first mortgagee, and the respondent the second. We shall refer to the parties here as "plaintiff" and "defendant." The plaintiff sued his mortgagor, Tancredi Cardelli, for the foreclosure of his mortgage, and made Carmelinda Cardelli a party defendant, because of her subsequent mortgage. The mortgagor defended the suit. The defendant Carmelinda Cardelli also defended, and by way of cross-complaint sought the foreclosure of her mortgage. After a full hearing upon the pleadings and evidence, the plaintiff was adjudged and decreed a first mortgage lien upon the property for $3,000, the defendant a second mortgage

lien thereon for $21,000, and the plaintiff was adjudged and decreed a third mortgage lien for the sum of $2,000 and for $435. The plaintiff appeals from that portion of the decree which adjudged him a third lien upon the property for the sums stated.

Counsel for the defendant state in their brief that both mortgagees appeal. The record does not support the statement. The only perfected appeal in this case is that of plaintiff, and we shall confine our opinion to the question of whether the chancellor was wrong in holding that the defendant, as second mortgagee, had a lien superior to that of plaintiff, as first mortgagee, for said sums of $2,000 and $435. The pertinent facts are these:

Orlando Cardelli and Tancredi Cardelli owned and operated as tenants in common that certain real estate known as the Cardelli Ranch, situate near Dayton, in Lyon County, Nevada. In 1918, Orlando Cardelli died testate, seized and possessed of his undivided one-half interest in the property, and left surviving him his widow, Carmelinda Cardelli. By his will he devised one-third of his estate to his widow, one-third to Tancredi Cardelli, his brother, and one-third to the children of said Tancredi Cardelli. Under his will he appointed and nominated Tancredi Cardelli as executor, who, over the protests and objections of the widow, qualified as executor. In the course of the administration of the estate, litigation arose between Carmelinda Cardelli and Tancredi Cardelli. In this litigation Tancredi Cardelli was represented by his attorney, Alfred Chartz, and Carmelinda Cardelli was represented by her attorney, the late C. E. Mack. When the will had been admitted to probate, the executor borrowed from Alfred Chartz, his attorney, the sum of $3,000, and to secure its payment executed a mortgage upon his undivided one-half interest in the property in controversy.

Upon the trial of the case, the plaintiff testified that, contemporaneously with the execution of his mortgage and as part consideration therefor, he verbally agreed to advance his mortgagor the money required in the

6

settlement of the estate of Orlando Cardelli, deceased, and if, upon the closing of said estate, his mortgagor did not have sufficient funds to pay his fees, he would accept his note therefor, which he did in the sum of $5,000, dated on May 15, 1920, payable on or before three years from date. The court found that this note was for legal services performed by plaintiff at the special instance and request of his mortgagor, in the matter of the settlement of the estate of Orlando Cardelli, deceased, and in effect found that there was a balance due upon said note of $2,000. The court further found that between August, 1924, and August, 1926, Tancredi Cardelli became indebted to plaintiff for services as his attorney in the sum of $435, which services were rendered for the protection of the mortgage security and in and about the business of his mortgagor. It was further found that prior to February 13, 1920, nearly all the services in the matter of the settlement of the estate of Orlando Cardelli had been performed, and that on February 13, 1920, Tancredi Cardelli and his wife executed and delivered to the defendant, Carmelinda Cardelli, a mortgage upon the property in controversy to secure the payment of their joint note for $21,000, and that thereafter, to wit, on May 27, 1921, Tancredi Cardelli paid Alfred Chartz $3,000, which sum Chartz credited upon the principal of his note for $5,000, dated May 15, 1920.

The defendant, Carmelinda Cardelli, in her answer and by way of cross-complaint, asserted that the plaintiff should be estopped, debarred, and precluded from setting up or claiming any lien prior or superior to that of the defendant for the reasons, first, that at the time of the execution and delivery of her mortgage, plaintiff, as attorney for Tancredi Cardelli, advised the defendant to accept and take a second mortgage upon the property for the conveyance of all of her right, title, and interest therein; that the plaintiff then and there represented to the defendant that his mortgage for $3,000 was the only existing lien or incumbrance upon the property, which sum of $3,000 would shortly be paid, and plaintiff's mortgage be discharged of record; that plaintiff participated

in the transactions culminating in the conveyance of defendant's interest in the property, and that plaintiff did not inform the defendant that he claimed a lien upon the property for any indebtedness other than that for the sum of $3,000. Though the trial court held that plaintiff was not estopped on the ground of fraud, as pleaded in the cross-complaint of Carmelinda Cardelli, it held that he was estopped from asserting the balance of $2,000 due on the $5,000 note as a first mortgage lien, basing his holding on a ground not pleaded by the defendant, Carmelinda. The reason given for so holding was that the indebtedness, evidenced by the $5,000 note, was for the services performed in the matter of the estate of Orlando Cardelli, deceased, and could have been paid out of that estate, and hence plaintiff should be estopped from asserting it as a claim against Tancredi Cardelli of superior equity to that of Carmelinda Cardelli. What matters it to Carmelinda? The estate was saved the $5,000. This is not questioned. To now say that a claim, arising out of a contract entered into long prior to the existence of the indebtedness to Carmelinda Cardelli, should be subject to a subsequent claim, for no other reason than that given, would be inequitable.

The trial court found the fact to be that plaintiff's mortgage was given to secure an existing debt of $3,000, payable from the mortgagor to the mortgagee, and, in addition thereto, that "the mortgage provided that it was given to secure any further advances which the mortgagee might make to the mortgagor, and any indebtedness which might thereafter become payable from the mortgagor to the mortgagee, and to secure all other sums then owing or which might thereafter become owing from the mortgagor to the mortgagee."

Mortgages are but contracts, and it is the law that a mortgage made in good faith, for the purpose of securing future debts, is valid, and that its validity is not affected by the fact that the future advances are to be made in services, instead of money. Jones on Mortgages (8th ed.), sec. 448. The trial court having construed plaintiff's mortgage to be one given to secure an

existing debt and any future indebtedness payable from the mortgagor to the mortgagee, and with fraud out of the case, the matter for decision tersely is this: When does a subsequent mortgage to secure a specific debt take precedence over a prior mortgage given to secure a present debt and future advances? The advances intended to be secured by the first mortgage are identified by the plaintiff, as well as by the findings of fact of the trial court. According to plaintiff's own testimony, he was obligated by his mortgage to make advances and perform the services required in the matter of the settlement of said estate. The court having found that the services had nearly all been performed prior to the date the defendant's second incumbrance attached, we are of opinion that it would be manifestly unsound to hold that plaintiff's actual notice or knowledge of the defendant's subsequent mortgage had the effect of taking from him the security for advances and services he was compelled by his contract to make and perform. Atkinson v. Foote, 44 Cal. App. 149, 186 P. 831; 41 C. J. 526, 527; Jones on Mortgages, sec. 454. Both upon principle and authority, we conclude that the chancellor was wrong in holding that the defendant, as second mortgagee, had a lien superior to that of plaintiff's first mortgage as to the sum of $2,000.

But with respect to plaintiff's contention that he was entitled to a prior and superior lien to that of the defendant for $435 for services performed at the special instance and request of his mortgagor after notice of the defendant's second mortgage we are not in accord. It may be conceded that the services performed subsequent to plaintiff's notice of the defendant's mortgage benefited the mortgage security, and was intended to be covered by the mortgage; but the instrument does not contain a clause making it obligatory upon the mortgagee to act as attorney in and about the business of his mortgage. The unusual feature of the instrument is that it is a contract between an attorney and client. As we interpret the evidence, it was entirely optional with plaintiff whether he would perform the services

or not after the estate of Orlando Cardelli had been closed and defendant's lien had attached. It is well settled that, where it is entirely optional with the mortgagee whether to make future advances or not, advances made after notice of a subsequent incumbrance are not superior to that of such subsequent incumbrance. The principle of the decisions is that such junior incumbrancer acquires a lien upon the property as it then is, and, as it is optional with the prior mortgagee whether he will make the advances, he is not allowed knowingly to prejudice the rights of the subsequent incumbrancer, or defeat or impair his lien, by adding voluntarily to his own incumbrance. Atkinson v. Foote, supra; Jones on Mortgages, sec. 453; 41 C. J. 526. Upon principle and authority we conclude that the chancellor was right in holding that the lien of the second mortgage was superior to that of the first, as to the sum of $435, though the chancellor assigned a wrong reason for so holding.

For the reasons given, it is ordered that the case be remanded to the trial court, and that the judgment and decree heretofore entered be modified, so as to constitute the balance of $2,000 due upon the $5,000 note a first lien.