In re Nicolas REISINI, Bankrupt.

Roger BOYLE, as Trustee in Bankruptcy of Nicolas Reisini, Plaintiff-Counterclaim Defendant,

v.

GOLENBOCK AND BARELL, a New York Partnership, Defendant-Counterclaim Plaintiff,

v.

Alan ROTHSCHILD, as Receiver/Escrow Agent of Certain Property of the Bankrupt, Additional Counterclaim Defendant.

Bankruptcy No. 79 B 1638 (PBA).

United States Bankruptcy Court, S.D. New York.

July 13, 1983.

Golenbock & Barell, New York City, Pro Se, for defendant-counterclaim plaintiff; Arthur M. Handler, Lillian S. Weigert, New York City, of counsel.

Boyle, Vogeler & Haimes, New York City, for Roger Boyle, Trustee; Roger Boyle, Jean A. O'Hare, New York City, of counsel.

PRUDENCE B. ABRAM, Bankruptcy Judge:

On January 18, 1983, Roger Boyle, as Trustee of the Estate of Nicolas Reisini, Bankrupt, commenced an adversary proceeding against the law firm of Golenbock and Barell ("G & B"), to set aside a certain mortgage as a preference pursuant to Section 60 of the former Bankruptcy Act, 11 U.S.C. § 96. An answer was filed by G & B on February 18, 1983 denying the mortgage was preferential and asserting a counterclaim against the Trustee and Alan Rothschild, the former receiver and present escrow agent for proceeds of sale of the mortgaged property, demanding payment out of the sale proceeds. On April 12, 1983, G & B filed a motion for summary judgment on the grounds that there is no genuine issue as to any material fact and that G & B is entitled to a judgment as a matter of law. The Trustee opposed G & B's request for summary judgment. A joint statement of material facts not in dispute was submitted. As set forth below, this court determines that the Trustee is entitled to judgment in part and that summary judgment must be denied in part because certain material issues of fact not stipulated to exist as to the remaining matter.

The facts are as follows: On April 26, 1979, Nicolas Reisini executed and delivered to G & B a second mortgage to secure a note of the same date in the principal amount of $150,000 on a house he owned located in Tuxedo, New York. The note bore a maturity date of June 30, 1979, or just over two months after its issue date. Four days after the execution of the note and mortgage and on April 30, 1979, G & B sent a letter to Reisini confirming the mortgage as

> "Security for the payment of all fees for professional services rendered and hereafter to be rendered by us to you and to any corporation in which you now or may hereafter have an interest, including, without limitation, Robin International, Inc., a New York corporation, and International Environmental Dynamics, Inc., a Delaware corporation. . . ."

Reisini signed the letter indicating his acceptance and approval of it.

On May 16, 1979, twenty days after execution and delivery of the mortgage to it, G & B duly recorded its mortgage. On September 7, 1979, an involuntary petition in bankruptcy was filed against Reisini. Adjudication eventually occurred almost two years later, on April 24, 1981. The Trustee was appointed on July 10, 1981; Alan Rothschild had previously been appointed as receiver for the Tuxedo house.

Pursuant to a consent order, the Tuxedo property was sold and the proceeds of the sale were delivered to Rothschild, the receiver, to hold in escrow pursuant to an agreement providing that

> "the liens and claims held by the parties hereto in and against the property shall be deemed to attach to the net proceeds of the sale of the property—the 'substitute res'—as if the proceeds were the property."

G & B's mortgage is subordinate to the first mortgage of W.R. Nominee Corp. On March 10, 1983, the court approved a compromise of the first mortgagee's claim in the sum of $343,300 plus interest and certain expenses. As of March 21, 1983 the funds held in escrow totalled $538,346.93

including accrued interest. The receiver has since made the required payment to the first mortgagee leaving a balance of approximately $139,569.79 in the fund, which amount is approximately $10,500 less than the principal amount G & B claims under its mortgage note. G & B states that its records reflect unpaid fees and disbursements in the amount of $187,447, which is approximately $48,000 more than is available in the fund, for professional services rendered by G & B on behalf of Reisini, Robin International, Inc., a corporation owned by Reisini, and possibly other corporations. The services rendered prior to April 25, 1979 total $43,248.50; services from April 26 through September 6, 1979 are in the amount of $60,505; and services rendered after September 7, 1979 are in the amount of $77,704.50. Disbursements of $6,090 have not been allocated by period.

G & B claims it is entitled under its mortgage to the remaining fund of $139,569.79 held by the receiver. Although in his complaint the Trustee sought to recover the entire amount remaining, the Trustee now concedes that G & B is entitled to recover under its mortgage for services rendered from the date of the execution and delivery of the mortgage and note, April 26, 1979, to the date of the filing of the involuntary petition, September 7, 1979, a total of $60,505, and that the mortgage was not preferential to this extent.

The Trustee continues to seek to avoid the G & B mortgage to the extent that it secures payment for services rendered prior to April 26, 1979 in the amount of $43,248.50. The Trustee also continues to seek to avoid the G & B mortgage to the extent that it purports to secure payment for services rendered after September 7, 1979 in the amount of $77,704.50.

■ With respect to the debt for services rendered prior to April 26, 1979, this court is of the opinion that the mortgage constitutes a voidable preference under § 60 of the former Bankruptcy Act because, although the transfer occurred outside of the preference period, perfection occurred within the preference period, *i.e.,* within four

months of the filing of the involuntary petition. Concededly the transfer was not a contemporaneous exchange with respect to the pre-April 26, 1979 debts and perfection did not occur until twenty days later.

Section 60(a)(7) of the Bankruptcy Act provides that the 21-day grace period for perfecting transfers is available only for transfers which are made "for or on account of a new and contemporaneous consideration." Section 60(a)(7) "provides no 'grace period' for perfecting transfers made for a consideration antedating their actual execution as between parties." 3 *Collier on Bankruptcy* § 60.39[4] at 964 (14th ed. 1977). In the present case, the transfer of real property was perfected when it was recorded, on May 16, 1979, within the four-month preference period. Although G & B perfected its mortgage within 21 days of the transfer, it cannot avail itself of the savings provision to escape the preference period when it, in fact, did not have a contemporaneous transfer with respect to $43,248.50 in legal fees. *Diamond Door Co. v. Lane-Stanton Lumber Co.,* 505 F.2d 1199 (9th Cir.1974); *In re Hygrade Envelope Corp.,* 393 F.2d 60, 63 (2d Cir.1968). The policy behind § 60(a)(7) is to protect a party who never intended to extend credit and never intended the transaction to be one for antecedent indebtedness, but whose transfer, because of a delay in perfection, is deemed to have occurred after the indebtedness arose. The court does not find this to be the case here. Accordingly, the transfer is deemed to have been made on May 16, 1979, and is thus a transfer on account of antecedent debt made within the four-month preference period as to the $43,248.50. This amount is recoverable by the Trustee from the escrow fund for the benefit of the estate of the bankrupt.

With respect to the $77,704.50 in legal services rendered after the involuntary petition, there is only approximately $36,000 in the escrow account available for application to this portion of the G & B claim after taking into account the $60,505 conceded by the Trustee as due to G & B and the $43,248.50 recoverable by the Trustee as a preference.

This court's opinion is that this approximately $36,000 fund balance cannot necessarily be recovered by G & B under its pre-petition mortgage. It cannot be disputed that G & B is not entitled to recover under its mortgage agreement for fees in excess of the amount of the mortgage note. It is also beyond dispute that with respect to future advances, "[a] mortgage to secure [these] advances is a potential lien for the full amount stated. But at any particular time it is a lien only to the extent of the debt or liability actually incurred." 38 N.Y. Jur. § 55 (1964) at 102. Here, as of the date of the filing of the petition, G & B's lien was limited to the amount of the services performed to that date.[1]

On its face it would appear that, as the bankrupt Reisini was divested of title to his assets as of the date of the filing of the involuntary petition once adjudication occurred, Reisini lacked the capacity to make a transfer to G & B through an increase in the G & B lien. Thus the post-petition transfer would appear to be avoidable by the Trustee pursuant to either Section 70(a) or (c) of the former Bankruptcy Act.[2] However this court cannot ignore the existence of the savings provision found within Section 70(d)(1) of the Bankruptcy Act which affords protection to a narrowly defined group of transfers occurring after an involuntary petition is filed and before appointment of the trustee. Section 70(d)(1) provides that an involuntary gap

---

1. Had G & B been legally obligated to perform services in the amount of $150,000 the mortgage might have been a lien for the full amount of the note. However, G & B was under no obligation to perform future services. See, *e.g., Second National Bank of Warren v. Boyle,* 155 Ohio St. 482, 99 N.E.2d 474 (1951); *Chartz v. Cardelli,* 52 Nev. 1, 279 P. 761 (1929).

2. The Trustee acquires, in addition to title to the bankrupt's property, status as a hypothetical lien creditor on the date of the petition pursuant to § 70(c) of the Bankruptcy Act. The Trustee's status as both title holder and lien holder would thus defeat the increase in the principal amount of the mortgage. See cases cited in footnote 1.

transfer of any of the bankrupt's property, other than real estate,

"to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred."

Section 21(g) of the Bankruptcy Act supplements Section 70(d)(1) by providing protection for a real estate transfer where the transferee has no knowledge of the pending bankruptcy proceedings:

"Unless a certified copy of the petition, decree, or order has been recorded in such office, in any county wherein the bankrupt owns or has an interest in real property in any State whose laws authorize such recording the commencement of a proceeding under this Act shall not be constructive notice to or affect the title of any subsequent bona fide purchaser or lienor of real property in such country for a present fair equivalent value and without actual notice of the pending of such proceeding..."

Section 21(g) impliedly imputes lack of good faith to a subsequent lienor who has acted with actual knowledge of the proceedings. Section 70(d)(3) expressly incorporates this notion but provides an exception to one who "has reasonable cause to believe that the petition in bankruptcy is not well founded." It makes little difference in the instant case which of these two sections applies.

It is undisputed that G & B had actual knowledge of the filing of the involuntary petition since it acted as attorneys for Reisini in connection with the involuntary petition. Thus in order to rebut the presumption of lack of good faith, G & B must prove that it had substantial reason to believe that the petition was insufficient and would not be sustained. It seems unlikely that G & B can meet that burden.

On August 7, 1979, one month before the involuntary petition was filed, Reisini was convicted of four counts of making false statements to federally insured banks. One of those banks was Wells Fargo, the creditor who filed the involuntary petition against Reisini.

On August 27, 1979, eleven days before the involuntary petition was filed, an involuntary petition was filed against Reisini's corporation, Robin International. In July of 1980, ten months after the involuntary petition against Reisini was filed, G & B as his counsel filed a motion for summary judgment seeking dismissal of the petition. On February 6, 1981 the District Court found there to exist "genuine issues of material fact, to wit, the number of creditors alleged by the bankrupt" and denied the motion for summary judgment. Three days after the denial of summary judgment, two other creditors were granted leave by the bankruptcy court to join as petitioning creditors in the involuntary petition against Reisini, thus eliminating any defect in the petition based on the number of petitioning creditors.[3] Bankruptcy Rule 104(e) expressly contemplates that additional creditors may join to support a single creditor petition if it appears there are more than twelve creditors since the court is required to afford a reasonable opportunity for other creditors to join in the petition. Indeed Bankruptcy Rule 104(e) also provides that if the alleged bankrupt asserts as a defense to a single creditor petition that there are more than twelve creditors, he must list the creditors by name and address and give the nature and amount of their claims, thus affording the single creditor the opportunity to get the others to join the petition.

Given the foregoing, it appears uncertain to this court that G & B could have had a substantial reason to believe that the petition would not be sustained. Under Section 70(d)(5), "a person asserting the validity of a transfer under this subdivision shall have the burden of proof." Here it is the obligation of G & B to rebut the presumption of lack of good faith. Even if G & B can prove it had reasonable cause throughout

---

**3.** The petition was filed by a single creditor. If an alleged bankrupt has more than twelve creditors there must be three petitioning creditors. See § 59(b) of the Bankruptcy Act.

this period to believe that the involuntary petition would be dismissed as not well founded, G & B still has the burden of proving that it acted in good faith and that the bankrupt received a fair equivalent value for the indebtedness created. A substantial question also exists as to these issues.

First, the mortgage was due on June 30, 1979, only two months after it was executed and well over two years before the last of the post-petition indebtedness arose. At the time the mortgage became due, G & B knew that if it then foreclosed it could recover no more than the amount due for services rendered to that date. This fact leads the court to believe that at the time of execution of the mortgage these post-petition services were not within the contemplation of the mortgage agreement.

Furthermore, it appears that the indebtedness alleged by G & B is not exclusively for services rendered to Reisini. It is evident that services were being performed in connection with Robin International as well as other corporations owned by Reisini. As to indebtedness attributable to services rendered to these third parties, Reisini would not appear to have received a present fair equivalent value as required under Section 70(d)(1) of the Bankruptcy Act. His status as sole shareholder of the corporation would not be a sufficient basis of consideration if, as seems likely, the corporations were hopelessly insolvent. The facts are that an involuntary petition had been filed against Robin International prior to the time a petition was filed against Reisini and that corporation was adjudicated a bankrupt on January 5, 1981, over three months before adjudication occurred in the present case.

This court concludes that G & B would be entitled to payment for services rendered during the involuntary gap period from the sale proceeds under its mortgage only to the extent that G & B acted in good faith and only to the extent that the services it provided were rendered on behalf of Reisini or if Reisini received fair consideration for the services. "The statute [§ 70(d)] places a very heavy burden on those who deal with

the bankrupt during this period." *Kohn v. Myers,* 266 F.2d 353, 357 (2d Cir.1959). A transferee who knows that a petition has been filed assumes "the burden of dealing with the bankrupt and all the attendant risks." *Id.* at 357. The G & B mortgage simply does not place G & B in a better position than the position afforded to involuntary gap creditors under Section 70(d) of the Bankruptcy Act. Because of the factual questions presented, the court must deny summary judgment to G & B as to this aspect.

Parties to submit judgment in accordance with this opinion.